Rhonda Trotter, Bar Number 169241
Julian Brew, Bar Number 150615
J. Raymond Warner, Bar Number 207892
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067
Telephone:  (310) 788-1000
Facsimile:  (310) 788-1200
Email address:  rtrotter@kayescholer.com
                jbrew@kayescholer.com
                rwarner@kayescholer.com

Attorneys for Defendant EXPERIAN HOLDINGS, INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| MICHAEL BLOMQUIST, | **CASE NO. C07-04108 JF** |
| Plaintiff, | **DEFENDANT EXPERIAN HOLDINGS, INC.'S, MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) & (6) AND 9(b);** |
| v. | |
| WASHINGTON MUTUAL, a Washington corporation; KERRY K. KILLINGER; JOSEPH W. SAUNDERS; COUNTRYWIDE HOME LOANS, INC. a Delaware corporation; ANGELO MOZILLO; WACHOVIA CORPORATION, a North Carolina corporation; KEN THOMPSON; CITIGROUP, a Delaware corporation; SANFORD WEILL; CHARLES PRINCE; GOLDMAN SACHS GROUP, INC., a Delaware corporation; HENRY PAULSON; BEAR STERNS COMPANIES, INC., a Delaware corporation; JAMES CAYNE; THE MCGRAW HILL COMPANY, INC., a Delaware corporation; HAROLD MCGRAW III; WELLS FARGO & COMPANY, a Delaware corporation; PATRICIA R. CALLAHAN; HERBERT M. SANDLER; ROCK HOLDINGS, INC., a Delaware corporation; EXPERIAN CORPORATION, a Delaware corporation; FIMALAC, INC.,  a Delaware corporation; MOODYS CORPORATION, a Delaware corporation; JAMES E. GILLERAN; JOHN M. REICH; JOHN D. HAWKE JR.; JOHN C. DUGAN; SUSAN SCHMIDT BIES; DONALD E. POWELL; SHEILA C. BAIR, | **DECLARATION OF J. RAYMOND WARNER, filed concurrently in support thereof;** **DECLARATION OF ROBIN NORRIS, filed concurrently in support thereof; and,** **[PROPOSED] ORDER DISMISSING ACTION WITH PREJUDICE, lodged concurrently in support thereof.** Date:       July 11, 2008 Time:      9:00 a.m. Place:     Ctrm. 3 Hon. Jeremy Fogel |
| Defendants. | |

1

**TABLE OF CONTENTS**

2

**Page**

3    NOTICE OF MOTION..........................................................................................1

4    STATEMENT OF RELIEF SOUGHT ............................................................1

5    POINTS AND AUTHORITIES .......................................................................2

6    I.    Factual Background ................................................................................2

7    II.   Legal Argument .....................................................................................2

8         A.    Plaintiff Fails To Allege Any Facts Establishing A Claims Against
9               Experian .......................................................................................2

10        B.    The Court Lacks Subject Matter Jurisdiction Over Experian ......................4

11              1.    There Is No Diversity Jurisdiction In This Case..............................5

12                    a.    Plaintiff And Experian Are Both Citizens Of California....................5

13                    b.    Plaintiff Has Not Alleged The Requisite Amount In Controversy ......7

14        C.    Plaintiff Has Not Stated Any Cognizable Federal Question Claim Under
                Any Of The Federal Statutes Cited In The AC....................................9

15              1.    Plaintiff Has Failed To Allege A Conspiracy Under 15 U.S.C. §§
16                    1, *et seq.*, The Sherman Anti-Trust Act .......................................9

17              2.    Plaintiff Alleges No Colorable Claim Under The Federal Trade
                      Commission Act Because It Provides No Private Right Of Action...............11

18              3.    Plaintiff Alleges No Colorable Claim Under The Robinson-Patman
19                    Act..................................................................................12

20              4.    There Is No Private Right Of Action For The Criminal Statutes
21                    Plaintiff Cites ....................................................................13

              5.    Plaintiffs Allege No Colorable Claims For Securities Fraud.....................15

22        D.    Plaintiff Fails To Plead Its Claims Sounding In Fraud With Sufficient
23              Particularity Under FED. R. CIV. P. 9(b)....................................18

24        E.    Without Diversity Or Federal Question Jurisdiction, The Court Should Not
                Hear The State Law Claims .........................................................19

25    III.  CONCLUSION.....................................................................................20

26

27

28

KAYE SCHOLER LLP

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Arbaugh v. Y&H Corp.*,
546 U.S.500, 126 S.Ct. 1235 (2006)..................................................20

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1990) ...........................................................3

*Bautista v. Pan American World Airlines, Inc.*,
828 F. 2d 546 (9th Cir. 1987) ..........................................................6

*Bell Atlantic Corp. v. Twombly*,
-- U.S. --, 127 S.Ct. 1955 (2007) ..........................................3, 10, 11

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)....................................................................13

*Buford v. Howe*,
10 F.3d 1184 (5th Cir. 1994) ..........................................................19

*Cannon v. University of Chicago*,
441 U.S. 677 (1979)....................................................................14

*Carlson v. Coca-Cola Co.*,
483 F.2d 279 (9th Cir. 1973) ..........................................................12

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ...........................................................4

*Dreisback v. Murphy*,
658 F.2d 720 (9th Cir. 1981) ..........................................................12

*Dumas v. Kipp*,
90 F.3d 386 (9th Cir. 1996) ............................................................4

*E&L Consulting. Ltd. v. Doman Industries Limited*,
472 F.3d 23 (2d Cir. 2006) ...........................................................12

*Federal Sav. & Loan Ins. Corp. v. Reeves*,
816 F.2d 130 (4th Cir. 1987) ..........................................................14

*Foster v. Wilson*,
504 F.3d 1046 (9th Cir. 2007) .........................................................16

*G.E.J. Corp. v. Uranium Aire, Inc.*,
311 F.2d 749 (9th Cir. 1962) ...........................................................3

*Gordon v. New York Stock Exchange, Inc.*,
422 U.S. 659 (1975)....................................................................13

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977)......................................................................8

*In re Glenfed*,

ii

42 F.3d at 1548 ....................................................................................................19

*In re Petco Animal Supplies Inc. Securities Litigation,*
    2005 WL 5957816 (S.D. Cal. Aug. 1, 2005) ................................................15

*Industrial Tectonics, Inc. v. Aero Alloy,*
    912 F.2d 1090 (9th Cir. 1990) .........................................................................7

*Innomed Labs, LLC v. ALZA Corp.,*
    368 F.3d 148 (2d Cir. 2004) ...........................................................................13

*Littlefield v. Continental Cas. Co.,*
    475 F. Supp. 887 (C.D. Cal. 1979) ..................................................................6

*McCallum v. City of Athens, Ga,*
    976 F.2d 649 (11th Cir. 1992) .......................................................................13

*Meisel v. Allstate Indem. Co.,*
    357 F.Supp.2d 1222 (E.D. Cal. 2005) ..............................................................8

*Milgrom v. Burstein,*
    374 F.Supp.2d 523 (E.D. Ky. 2005) ........................................................14, 15

*Munoz v. Small Business Administration,*
    644 F.2d 1361 (9th Cir. 1981) .........................................................................6

*Musson Theatrical, Inc. v. Federal Express Corp.,*
    89 F. 3d 1244 (6th Cir. 1996) ..........................................................................9

*Principal Mut. Life Ins. Co. v. Juntunen,*
    838 F.2d 942 (7th Cir. 1988) ...........................................................................9

*Rockefeller v. United States Court of Appeals Office, For The Tenth Circuit Judges,*
    248 F.Supp.2d 17 (D.D.C. 2003) ...................................................................13

*Shushany v. Allwaste, Inc.,*
    992 F.2d 517 (5th Cir. 1993) .........................................................................18

*SmileCare Dental Group v. Delta Dental Plan of California, Inc.,*
    88 F.3d 780 (9th Cir. 1996) .............................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    __ U.S. __, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)...................................16

*Tosco Corp. v. Communities for a Better Environment,*
    236 F.3d 495 (9th Cir. 2001) ...........................................................................6

*Touche Ross & Co. v. Redington,*
    442 U.S. 560 (1979).......................................................................................14

*Trudeau v. United States,*
    68 Fed.Cl. 121 (2005) ....................................................................................12

*Unger v. Del E. Webb Corp.,*
    233 F. Supp. 713 (N.D. Cal. 1964) ..................................................................7

KAYE SCHOLER LLP

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................................18, 19

*Williams v. McCausland*,
  791 F.Supp. 992 (S.D.N.Y. 1992) .................................................................................................14

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ........................................................................................................18

*Wisdom v. First Midwest Bank of Poplar Bluff*, 1
  67 F.3d 402 (8th Cir. 1999) ..........................................................................................................14

*Zinus Inc. v. Simmons Bedding Co.*,
  USDC Case No. C 07-3012 PVT, 2007 WL 4287391 (N.D. Cal. Dec. 6, 2007) ...........................4

**Statutes**

15 U.S.C. § 52 ....................................................................................................................................11

15 U.S.C. § 57a(f) .............................................................................................................................11

15 U.S.C. § 78u-4 ........................................................................................................................15, 16

15 U.S.C. § 78u-4(b)(1) .....................................................................................................................16

15 U.S.C. § 78u-4(b)(2) .....................................................................................................................16

18 U.S.C. §  1005 ..............................................................................................................................14

18 U.S.C. §  1007 ..............................................................................................................................14

18 U.S.C. § 1001 ...............................................................................................................................14

18 U.S.C. § 1014 ...............................................................................................................................14

18 U.S.C. § 1341 ...............................................................................................................................14

18 U.S.C. § 1343 ...............................................................................................................................14

18 U.S.C. § 1344 ...............................................................................................................................14

18 U.S.C. § 1345 ...............................................................................................................................14

18 U.S.C. § 1348 ...............................................................................................................................14

18 U.S.C. § 1349 ...............................................................................................................................14

18 U.S.C. § 1350(b) ..........................................................................................................................14

18 U.S.C. § 242 .................................................................................................................................14

18 U.S.C. § 371 .................................................................................................................................14

28 U.S.C. § 1332(c)(1) ........................................................................................................................6

KAYE SCHOLER LLP

Fed. R. Civ. P. 12(b)(1)...........................................................................................1, 2, 4, 7, 9, 11, 12, 18

Fed. R. Civ. P. 12(b)(6).....................................................................1, 2, 3, 4, 9, 11, 12, 13, 18, 19

Fed. R. Civ. P. 9(b) ......................................................................................................................2, 18, 19

Federal Trade Commission Act,
    15 U.S.C. §§ 41, et seq. ..........................................................................................................11

Robinson-Patman Act, 15 U.S.C. § 13a............................................................................................12

Sherman Anti-Trust Act, 15 U.S.C. §§ 1 et seq................................................................................9, 10

Title U.S.C. 28 § 1332 ........................................................................................................................5

Title U.S.C. 28 § 1332(a).................................................................................................................6, 7

## **Other Authorities**

Schwarzer, Tashima & Wagstaffe,
    Cal. Prac. Guide: Federal Civ. Pro. Before Trial (TRG 2007) at ¶ 2:440 ......................................8

Schwarzer, Tashima & Wagstaffe,
    Cal. Prac. Guide: Federal Civ. Pro. Before Trial (TRG 2007) at ¶ 9:187 ......................................3

KAYE SCHOLER LLP

23244793.DOC    DEFENDANT EXPERIAN'S MOTION TO DISMISS C07-04108 JF

1

**NOTICE OF MOTION**

2

**TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:**

3        **PLEASE TAKE NOTICE** that on July 11, 2008, at 9:00 a.m. or as soon thereafter as

4    counsel may be heard in Courtroom 3 of the United States District Court for the Northern District of

5    California, the Honorable Jeremy Fogel, presiding, located at 280 South 1st Street, San Jose,

6    California 95113, Defendant Experian Holdings, Inc. ("Experian"), sued erroneously in this matter

7    as "Experian Corporation," will and hereby does move to dismiss the Amended Complaint ("AC")

8    in this action pursuant to FED. R. CIV. P. 12(b)(1) and )(6).

9        This Motion to Dismiss is based upon this Notice of Motion, the attached Memorandum of

10   Points and Authorities, all documents and pleadings on file in this case, and such other evidence or

11   argument that may be presented at or before the hearing on this Motion.

12                            **STATEMENT OF RELIEF SOUGHT**

13       Experian seeks dismissal on the following grounds:

14       *First*, the sole basis for naming Experian is that Experian is the "parent company of

15   LowerMyBills.com." AC at 12:17-19. However, Plaintiff does not allege that LowerMyBills.com is

16   or was the agent of LowerMyBills.com (or vice versa), ever acted on behalf of Experian, or is or was

17   the alter ego of Experian. Therefore, the AC fails to allege any cognizable claim against Experian

18   and should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

19       *Second*, Plaintiff's six putative causes of action cite a variety of unrelated federal statutes,

20   with no attempt whatsoever to allege a cognizable basis for a claim under any of those statutes. In

21   addition, many of the statutes Plaintiff cites do not provide a private right of action for Plaintiff, or

22   Plaintiff has failed to even attempt to allege the elements of a claim. Therefore, these claims should

23   be dismissed pursuant FED. R. CIV. P. 12(b)(6).

24       *Third,* Plaintiff alleges jurisdiction based solely on diversity of citizenship. AC at 2:09-10.

25   However, complete diversity does not exist as Plaintiff and Experian (along with other Defendants)

26   are all citizens of the State of California. Plaintiff also has not alleged the jurisdictional amount in

27   controversy required to establish diversity jurisdiction. Therefore, this case should be dismissed for

28

KAYE SCHOLER LLP

23244793.DOC    DEFENDANT EXPERIAN'S MOTION TO DISMISS C07-04108 JF

lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1).

**Fourth,** while Plaintiff does not allege federal question jurisdiction, to the extent Plaintiff seeks to base jurisdiction on a federal question, the AC also fails to allege a cognizable federal question cause of action. As a result, Plaintiff states no cognizable federal claim, and the case should be dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(1).

**Fifth**, Plaintiff has failed to allege his claims with the particularity required by FED. R. CIV. P. 9(b). Each of Plaintiff's claims is based on alleged fraudulent misrepresentations to borrowers and the marketplace; yet, Plaintiff fails to provide any detailed facts about the alleged statement on which these claims are based, let alone as to Experian. Therefore, each of Plaintiff's Causes of Action should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

## POINTS AND AUTHORITIES

### I. Factual Background.

Experian is a financial information center operating in the credit, marketing and automotive sectors. Plaintiff describes himself as a licensed mortgage and real estate agent and the owner of Michael Scott Properties, Inc. ("MSP").

There is no relationship between Plaintiff and Experian. Instead, by this action, Plaintiff is apparently attempting to redress perceived wrongs in the mortgage lending industry. In bringing this action, he has swept Experian up as part of the thirty Defendants that he claims are responsible for the perceived ills and their effect on the economy.

There is no basis for Experian's presence in this lawsuit, even assuming that Plaintiff has standing and there is an actual foundation in law for it to proceed on any of its claims against any of the other Defendants.

### II. Legal Argument.

For several different reasons, this action should be dismissed as to Experian.

#### A. Plaintiff Fails To Allege Any Facts Establishing A Claims Against Experian.

A FED. R. CIV. P. 12(b)(6) motion tests the sufficiency of a plaintiff's complaint on its face to determine whether the facts that is alleges, if true, would entitle plaintiff to some form of legal remedy. If there is a lack of a cognizable legal theory or absence of sufficient facts alleged under a

cognizable legal theory, dismissal of the complaint or claim is proper under Rule 12(b)(6). *See* Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (TRG 2007) at ¶ 9:187 (citing, *inter alia*, *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)); *see also SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). Moreover, the Court may test whether the complaint's factual allegations are "plausible." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S.Ct. 1955, 1974 (2007).

Plaintiff's sole allegation as to Experian states as follows:

"After May 2005, Defendant Experian Services Corporation,[1] a Delaware corporation was, and is now the parent company of LowerMyBills.com ("Bills"). Bills is a lead generation/information broker that engages in extremely misleading advertising, particularly option ARMs."

*See* AC at 12:17-21. The AC makes no allegation regarding Experian. Indeed, the AC does not even mention Experian again after this allegation. Experian is not included in any of the categories of parties defined in Paragraph 33 ("Lenders," "Bankers," "Executives," "Ratings" or "Agencies"), as to which allegations are made. Apart from again identifying Experian's subsidiary LowerMyBills.com as "Bills," AC at 16:10-11, that is the only other time "Bills" is even mentioned.

Plaintiff makes no allegation of any wrongdoing by Experian. The sole allegation by which Plaintiff ties Experian into this action is that it is the parent of LowerMyBills.com, which Plaintiff conclusorily alleges engaged in "misleading advertising." This vague and conclusory statement gives no factual basis for a claim even against LowerMyBills.com.. Moreover, even if Plaintiff alleged a factual basis for a claim against LowerMyBills.com, Plaintiff fails to allege any legal or factual basis for holding Experian liable for its subsidiary's alleged conduct.

The mere fact that one corporation owns another corporation is not a sufficient basis for imputing liability on the parent for the actions of the subsidiary. *G.E.J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 756 (9th Cir. 1962). To state a theory of the parent's liability for its subsidiary's acts,

---

[1] Plaintiff addresses Experian as "Experian Corporation" in the caption of this action and as "Experian Services Corporation" in the quote above. Both are named in error. Experian Holdings, Inc. ("Experian" herein) is the parent of LowerMyBills.com.

KAYE SCHOLER LLP

the plaintiff must allege facts showing that one is acting for the other, or the two are actually acting as one. *See e.g.*, *Zinus Inc. v. Simmons Bedding Co.*, USDC Case No. C 07-3012 PVT, 2007 WL 4287391, at * 5 (N.D. Cal. Dec. 6, 2007) (dismissing for failure to "state allegations that plausibly suggest Zinus is entitled to relief from Simmons as the alter-ego of Dreamwell"); *see also*, *Doe v. Unocal Corp.*, 248 F.3d 915, 925-30 (9th Cir. 2001) (insufficient showing of alter ego or agency to support personal jurisdiction in pursuit of claim).

Plaintiff has made no attempt to allege even a theory for holding Experian liable for whatever wrongful acts it claims LowerMyBills.com committed, let alone a factual basis for liability, whether based on agency or alter ego. The entire pleading in support of claims against Experian consists of two sentences - one alleging merely that Experian is the parent of LowerMyBills.com and the second alleging without any factual support whatsoever that LowerMyBills.com engages in "misleading advertising." Even if the allegation about LowerMyBills.com's advertising practices were true, Plaintiff has alleged no facts supporting either an alter ego or agency theory of liability.

Lacking any plausible allegations supporting such a theory, the entire Amended Complaint should be dismissed as to Experian pursuant to Rule 12(b)(6). Moreover, there is no reason to grant Plaintiff leave to amend. When amendment would be futile, dismissal should be with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996). Plaintiff has already amended his complaint once, and it barely mentions Experian, let alone alleges any wrongful act by Experian. Plaintiff has gone to great lengths to define other defendants and their acts, including categorizing them as "Lenders," "Agencies" and other terms. Experian (and, for that matter, LowerMyBills.com) fall into none of those categories and Plaintiff has not alleged a single fact in support of a claim against Experian. To allow Plaintiff to further amend the Amended Complaint would be futile, a waste of the parties' time and money and of the Court's judicial resources. At a minimum, before leave to amend is even considered, Plaintiff should describe how it can amend to allege a claim against Experian.

## B.     The Court Lacks Subject Matter Jurisdiction Over Experian.

A complaint that fails to allege a basis for subject matter jurisdiction should be dismissed under FED. R. CIV. P. 12(b)(1). Plaintiff alleges subject matter based only on diversity jurisdiction. AC at 2:09-11. As set forth below, Plaintiff fails to allege facts sufficient to establish jurisdiction

4

KAYE SCHOLER LLP

based on diversity of citizenship, and the facts establish there is no diversity jurisdiction. Moreover, while Plaintiff's six causes of action cite a number of federal statutes, none of those federal statutes are a valid basis for federal jurisdiction. Therefore, to the extent Plaintiff now seeks to add federal question as a basis for subject matter jurisdiction, dismissal would still be required.

### 1.     There Is No Diversity Jurisdiction In This Case.

Plaintiff's claim of jurisdiction based on diversity of citizenship fails for two independent reasons: (1) Plaintiff and Experian are both citizens of California and (2) Plaintiff has not properly alleged the jurisdictional amount in controversy required under the federal diversity statute.

### a.     Plaintiff And Experian Are Both Citizens Of California.

Plaintiff asserts that diversity jurisdiction is the basis for bringing his Amended Complaint in federal court: "Diversity of citizenship, amount in controversy Title U.S.C. 28 § 1332 exist . . . ." *See* AC at 2:09-11. However, Plaintiff[2] misapprehends the meaning and effect of diversity jurisdiction, which does ***not*** exist as between him and Experian.

The federal diversity statute provides:

"The district courts shall have original jurisdiction of all civil actions where the

matter in controversy exceeds the sum or value of $75,000, and is between:

- citizens of different States;

- citizens of a State and citizens or subjects of a foreign state;

- citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

- a foreign state, defined in section 1603(a) of this title, as plaintiff, and citizens

---

[2]     It is not entirely clear whether there is one Plaintiff in this action, or two. The caption identifies only Michael Blomquist as the sole Plaintiff. Paragraph 2 of the Amended Complaint is entitled "Plaintiffs" but states that "Plaintiff is Michael Blomquist ("MB"); who is the sole owner and president of Michael Scott Properties, Inc." *See* AC at 2:17-18. It goes on to allege that Michael Scott Properties, Inc. ("MSP") was licensed by the California Department of Real Estate from April 6, 2000, through April 30, 2007. Plaintiff appears to treat MSP as an additional Plaintiff, though the AC provides no allegations as to its business, form or location - or even whether it exists any longer. According to the California Secretary of State website, MSP was incorporated in California on November 11, 2002, and is located at the same address given by Plaintiff Michael Blomquist as his address in Los Gatos, California. *See* Declaration of J. Raymond Warner ("Warner Decl.") at ¶ 2 & Ex. A. Presumably, that is MSP's principal place of business.

KAYE SCHOLER LLP

1    of a State or of different States."

2  28 U.S.C. § 1332(a).

3       The opposing parties must be ***totally*** diverse to establish diversity jurisdiction - *i.e.*, citizens

4  of ***different States***.  If any defendant is a citizen of the same state as any of the plaintiffs, diversity

5  jurisdiction is broken and the Court does not have subject matter jurisdiction over the claims.  *Munoz*

6  *v. Small Business Administration*, 644 F.2d 1361, 1365 (9th Cir. 1981).  A party claiming diversity

7  jurisdiction has the burden of pleading and proving facts sufficient to establish jurisdiction on this

8  basis.  *Littlefield v. Continental Cas. Co.*, 475 F. Supp. 887, 889 (C.D. Cal. 1979).

9       Plaintiff Michael Blomquist does not allege his citizenship, and therefore fails to make even

10 the most basic allegation necessary to establish diversity jurisdiction.  *See Bautista v. Pan American*

11 *World Airlines, Inc.*, 828 F. 2d 546, 552 (9th Cir. 1987) (holding that allegation that defendant is a

12 "citizen of state other than that of plaintiff," but without alleging the factual basis, is insufficient).  In

13 fact, the AC itself suggests that Blomquist is a California citizen.  Blomquist  brings this action as a

14 *pro se* plaintiff, and the caption page of the AC states that his address is 18234 Daves Avenue, Los

15 Gatos, California 95030, indicating that he resides in California.  Moreover, public records reveal

16 that that Blomquist was issued a Social Security card in California in 1983.  Warner Decl. at ¶ 2.  He

17 has also been licensed as a realtor by the State of California.  *Id*.  As set forth below, he also is the

18 sole owner and president of MSP, a California corporation.

19      To the extent MSP is also a Plaintiff, it "shall be deemed a citizen of any State by which it

20 has been incorporated and of the State where it has its principal place of business."  28 U.S.C. §

21 1332(c)(1).  MSP was incorporated in California in 2002.  Warner Decl. at ¶ 1 & Ex. A.  MSP was

22 licensed with the California Department of Real Estate for several years.  *See* AC at 2:17-22.  MSP's

23 business address is the same as Blomquist's.  Warner Decl., Ex. A.  Thus, even if Blomquist were

24 not a California citizen, MSP's presence in the lawsuit would defeat diversity jurisdiction.

25      As Plaintiff averred in the Amended Complaint, Experian is incorporated in the State of

26 Delaware.  However, Experian's principal place of business is in Costa Mesa, California, where it

27 keeps its corporate offices and its center of operations.  *Tosco Corp. v. Communities for a Better*

28 *Environment*, 236 F.3d 495, 497 (9th Cir. 2001).  Both of the judicially established tests for the

6

KAYE SCHOLER LLP

principal place of business of a corporation point to California.

**First**, the "nerve center" test considers where its directors meet, where the executives have their offices, where the administrative and financial offices are located and records kept, where the corporate income tax return is filed, where the "home office" is located, and where day-to-day control of the business is exercised. *Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964). As set forth in the attached Declaration of Robin Norris ("Norris Decl.") at ¶ 2, all of those criteria point to Costa Mesa as Experian's principal place of business.

**Second**, the totality of activities test considers where the corporation conducts the most activity that is visible and impacts the public, *i.e.*, where it is most noticeably present. *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990). As set forth in the Norris Declaration, Experian's operations are in Costa Mesa, it supervises its business in Costa Mesa and employs persons and conducts its business from Costa Mesa. Norris Decl. at ¶ 2. Its website, www.experian.com, gives a "contact" address in Costa Mesa, California. *Id*. By the "totality of its activities," its principal place of business is therefore in California.

Thus, under any test, Experian *is a citizen of the State of California*.[3] Because Experian and Plaintiff (or both Plaintiffs, if MSP is accorded that status) are all citizens of California, diversity is broken and this Court lacks subject matter jurisdiction over this matter.

No possible amended pleading can avoid the fact that Plaintiff(s) and Experian are all California citizens. Therefore, allowing a further amended complaint would be futile and useless. On that basis, the Court should dismiss this action against Experian with prejudice pursuant to FED. R. CIV. P. 12(b)(1). At a minimum, before permitting any further amendment, Plaintiff should be required to explain what additional allegations would establish diversity jurisdiction.

### b. Plaintiff Has Not Alleged The Requisite Amount In Controversy.

The second requirement for diversity jurisdiction is that the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). This is a jurisdictional requirement and where it is not met,

---

[3] Experian cannot speak for the other putative co-defendants named in this action, but based on generally available public information, it would appear that some of those co-defendants also maintain a principal place of business within California.

23244793.DOC    DEFENDANT EXPERIAN'S MOTION TO DISMISS C07-04108 JF

there is no diversity jurisdiction.  Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (TRG 2007) at ¶ 2:440.  The amount in controversy for jurisdictional purposes is determined by the amount of damages or the value of the property that is the subject of the action.  *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977); *Meisel v. Allstate Indem. Co.*, 357 F.Supp.2d 1222, 1225 (E.D. Cal. 2005).

Not only has Plaintiff failed to allege that the $75,000 jurisdictional amount has been exceeded, ***he has not alleged any damages whatsoever.***  Nowhere in the Amended Complaint has Plaintiff explained, or even barely alleged, the nature, derivation or amount of any damages.  The Amended Complaint is replete with endless citations to imagined violations of various laws, but it fails to identify any damages.  Nowhere does Plaintiff allege *who* lost *what*; what specific damages apply to each such loss; how damages are to be apportioned; who may recover; or any means, realistic or otherwise, of computing damages, if any are even available.

Plaintiff claims six causes of action, but has not alleged any amount or computation of damages in any of the six.  *See* AC at 29:03-37:21.  Even Plaintiff's prayer for relief does not allege damages.  Instead, it seeks injunctive relief under various different theories (Prayer ¶¶ 1&2), that homebuyers not be held liable for "any gains as a result of the Lender's [*sic*] loss on loans originated during relevant times" (*Id*. ¶6), and that the various "Agencies" demote or remove their executives, directors or chairpersons from their current positions (*Id*. ¶ 7).

While a claim for injunctive relief may be valued to assign an amount in controversy for jurisdictional purposes, Plaintiff fails to allege any monetary value whatsoever.

The only prayer that even remotely touches on monetary relief is that Plaintiff seeks to have all of the defendants' executives disgorge "all unlawful profits in the amounts to be determined by the court.  Award will be placed with a conservator to help displaced homeowners and families locate and secure shelter."  (*Id*. ¶ 3.)  This is a statement without meaning.  Plaintiff is merely throwing the burden on the Court to determine a basis and source of damages.

Plaintiff also asks that the defendants pay $10 million to an appointed conservator (without identifying who that conservator should be or what its duties would be) in order to fund a so-called "non-profit organization" that Plaintiff apparently intends to establish.  There is no basis in damages

8

for a grant of any kind to such an organization, nor does Plaintiff even attempt to establish one.

Plaintiff also asks for his "cost of suit," something better left to a bill of costs *after* this action is decided, if any such costs are supportable. None of such costs is computable as damages. *See Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988). Notably, as a *pro se* Plaintiff, there is no request for attorneys' fees.

Plaintiff has not alleged any damages, much less the jurisdictional damages required to establish diversity jurisdiction. For this separate reason, the Court does not hold subject matter jurisdiction and this case should be dismissed pursuant to FED. R. CIV. P. 12(b)(1).

### C.    Plaintiff Has Not Stated Any Cognizable Federal Question Claim Under Any Of The Federal Statutes Cited In The AC.

Plaintiff alleges jurisdiction based solely on diversity jurisdiction, which, as demonstrated above, does not exist. To the extent Plaintiff claims jurisdiction based on a federal question, based on the various federal statutes cited at different places in the AC, Plaintiff likewise fails to allege a proper basis for subject matter jurisdiction. To establish jurisdiction based on a federal question, a complaint must properly allege a claim under a federal statute that is "colorable," and not "wholly insubstantial and frivolous." *See Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F. 3d 1244, 1248 (6th Cir. 1996); *Hoye v. Sullivan*, 985 F. 2d 990, 991 (9th Cir. 1993).

Despite littering citations to several federal statutes throughout the AC, Plaintiff fails to allege a "colorable" basis for a claim under any of those statutes, and most do not even allow a private right of action. Therefore, none of these federal statutes is sufficient to establish a basis for subject matter jurisdiction, and the claims should be dismissed under FED. R. CIV.P. 12(b)(1). In addition, because Plaintiff has alleged no cognizable claim under any of these federal statutes, each claim based on these statutes should be dismissed under FED. R. CIV.P. 12(b)(6).

### 1.    Plaintiff Has Failed To Allege A Conspiracy Under 15 U.S.C. §§ 1, *et seq.*, The Sherman Anti-Trust Act.

The first federal statute cited by Plaintiff in several of his Causes of Action is the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 *et seq*. ("Sherman Act"). Plaintiff cites it as support for his claims in Paragraph 10 of the Amended Complaint as well as in ¶¶ 50 (First Cause of Action), 54 (Second

9

Cause of Action) and 54 (Third Cause of Action). Plaintiff, however, fails to allege any colorable claim under the Sherman Act; indeed, Plaintiff makes no attempt to plead the elements of a federal antitrust violation under Section 1 of the Sherman Act.

To plead a violation of the Sherman Act, Plaintiff must allege sufficient facts to support a claim of an actual conspiracy between two or more parties that is in restraint of trade. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1970 (2007). Mere descriptions of "parallel conduct" without independent allegations of actual agreement among the defendants, thus creating a conspiracy, are inadequate to state a Sherman Act claim. *Id.*

Plaintiff alleges that each defendant has committed various wrongs, most of which have nothing to do with any restraint of trade. Plaintiff alleges, for example, that Experian acquired LowerMyBills.com, which he characterizes as conducting "misleading advertising." Individual defendant Herbert M. Sandler is alleged to have made "fraudulent and misleading statements about option ARM loans." AC at 10:10-11. Defendant Rock Holdings Inc. is alleged to be the parent of Quicken, Loans, Inc., which Plaintiff also characterizes as committing misleading advertising. *Id.* at 12:11-16. Similar vague allegations are made as to other defendants.

Plaintiff also groups individual defendants into categories, such as the "Lenders," the "Bankers," the "Executives," the "Ratings" and the "Agencies." Notably, neither Experian nor LowerMyBills.com is a member of any of these groups. *Id.* at 16:01-13. Moreover, despite listing several defendants as falling into each of these categories, Plaintiff makes no allegations of actual concerted activities by the different defendants.

Plaintiff alleges that members of these different groups committed similar, allegedly illegal, acts. For example, the Lenders "induced borrowers into obtaining loans they could not afford" with deceptive advertising and misleading loan programs (AC at 26:04-14); told borrowers that "they could refinance in a few months and would be able to obtain more favorable terms as their homes appreciated" (*id.* at 26:25-27:01); made inadequate disclosures regarding capital gains liabilities if the Lenders suffered a loss (*id.* at 27:08-11); induced sales representatives to push adjustable rate loans by paying higher commissions for them (*id.* at 27:15-18); engaged in "fraud, deceptive and/or misleading acts which resulted in Lenders obtaining inflated appraisals" (*id.* at 28:06-09); and

10

numerous other claims.  Similarly, Plaintiff alleges that the "Agencies, Ratings and Bankers" also ratified many of the Lenders' acts.  (*Id*. throughout ¶ 48).

Setting aside the vague and conclusory nature of these allegations, and the fact that none of them is alleged to have restrained trade, Plaintiff does not allege even in boilerplate terms -- let alone with facts sufficient to satisfy the pleading requirements for a Sherman Act claim -- that the various defendants conspired with each other in violation of the Sherman Act.  There is no allegation of separate agreement among any of the defendants sufficient to successfully allege a conspiracy, or facts sufficient to infer an agreement.  *Bell Atlantic Corp.*, 127 S. Ct. at 1970.

Similarly, none of the six Causes of Action even alleges that there was a conspiracy to violate the antitrust laws.  Even in the three Causes of Action (the First, Second and Third) that cite 15 U.S.C. § 1, conspiracy is never actually alleged.  For example, the First Cause of Action alleges only that "All Defendants have made, encouraged, caused, ratified, or permitted others to make untrue or misleading statements that could restrain trade."  AC at 30:10-12.  That allegation suggests nothing more than that each defendant has individually committed such acts, in courses of parallel conduct.  *Bell Atlantic Corp.*, 127 S.Ct. at 1970-71.

Plaintiff has not alleged a conspiracy, what it consisted of, who participated in it, what was said, what was done or any other indicia of a predicate conspiracy, what acts restrained trade, and how they restrained trade.  Without such, Plaintiff's AC fails to allege even a colorable claim for violation of the Sherman Act.  Accordingly, Plaintiff fails to state a claim under the Sherman Act and the First, Second and Third Causes of Action should be dismissed for failure to state a claim under FED. R. CIV.P. 12(b)(6) to the extent they seek recovery under the Sherman Act.  Plaintiff's citations to the Sherman Act also are insufficient to establish federal subject matter jurisdiction, and should also be dismissed under FED. R. CIV.P. 12(b)(1).

**2.**    **Plaintiff Alleges No Colorable Claim Under The Federal Trade Commission Act Because It Provides No Private Right Of Action.**

In First and Second Causes of Action, Plaintiff cites the Federal Trade Commission Act, 15 U.S.C. §§ 41, *et seq*. ("FTC Act").  Plaintiff cites 15 U.S.C. § 57a(f) in the Amended Complaint ¶ 10; and §§ 52 & 57a(f) in ¶¶ 50, 54.  This is not a valid basis for subject matter jurisdiction, because

11

Plaintiff cannot and does not allege a colorable claim under the FTC Act. Moreover, because Plaintiff has not and cannot allege a claim under the FTC Act, the First and Second Causes of Action should be dismissed FED. R. CIV.P. 12(b)(6) to the extent they seek relief under the FTC Act.

No private right of action is available under the FTC Act. *See Dreisback v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981) ("[t]he Act rests initial remedial power solely in the Federal Trade Commission") (citing *Carlson v. Coca-Cola Co.*, 483 F.2d 279 (9th Cir. 1973); *Trudeau v. United States*, 68 Fed.Cl. 121, 130 (2005) (no implied right of action under the FTC Act).

Plaintiff's allegations pursuant to the FTC Act fail to state a claim for which relief may be granted. Furthermore, this Court has no jurisdiction to hear such claims brought by a private party. Therefore, Plaintiffs claims for false advertising and unfair or deceptive acts or practices under the FTC Act must be dismissed pursuant to FED. R. CIV.P. 12(b)(1) & (6).

### 3.   Plaintiff Alleges No Colorable Claim Under The Robinson-Patman Act.

Plaintiff's Third Cause of Action for selling products below cost cites the Robinson-Patman Act, 15 U.S.C. § 13a. Plaintiff alleges that Defendants have been "selling loans below cost," in violation of this statute, the Sherman Act and various California state laws.[4] As with each of the other federal statutes Plaintiff cites, Plaintiff fails to allege a causes of action under the Robinson-Patman Act, and the Third Cause of Action should be dismissed under FED. R. CIV.P. 12(b)(6). In addition, because Plaintiff alleges no colorable claim under the Robinson-Patman Act, it is not a valid basis for subject matter jurisdiction, and should be dismissed under FED. R. CIV.P. 12(b)(1).

*First*, Plaintiff has no standing to bring a claim under the Robinson Patman Act. That statute applies only to "price discrimination between different purchasers." *E&L Consulting. Ltd. v. Doman Industries Limited*, 472 F.3d 23, 32 (2d Cir. 2006) (affirming dismissal on lack of standing grounds). Plaintiff does not allege that he is either a purchaser from or a competitor of any of the Defendants, including specifically Experian. None of the sparse facts that he has alleged would support such a claim in any case. Therefore, he has no standing to bring a claim under the Robinson Patman Act,

---

[4]   Experian has already explained why Plaintiff's allegations as to the Sherman Act are inadequate. As explained later in this motion, the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims because no federal claim, or even federal jurisdiction, will remain.

KAYE SCHOLER LLP

and it should be dismissed for that reason alone.

*Second*, the Robinson Patman Act only applies to below-cost sales of goods or commodities, not services. *See, e.g., Innomed Labs, LLC v. ALZA Corp.*, 368 F.3d 148, 156 (2d Cir. 2004) ("The Robinson Patman Act's prohibition on price discrimination extends only to transactions involving 'commodities'," meaning "tangible products of trade"); *McCallum v. City of Athens, Ga*, 976 F.2d 649, 656 (11th Cir. 1992) ("Claims under the Robinson Patman Act must be predicated on the occurrence of an interstate sale of the relevant commodity"); *see also Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 662 n.4 (1975) (affirming holdings of lower courts that Robinson Patman Act applied only to goods, not services). Plaintiff has not alleged the sale of any tangible product, but of home loans, and therefore fails to allege a Robinson-Patman Act claim.

*Third,* claims of "below cost sales" are only actionable if the Plaintiff alleges "recoupment," which is a prerequisite to holding a competitor liable under the federal antitrust laws for charging low prices. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993). That is, the competitor must have had a reasonable prospect of recouping its investment in below-cost pricing. *Id.* Plaintiff makes no such allegation. To the contrary, Plaintiff essentially alleges that the mortgage lending industry is collapsing due to Defendants' acts, and homeowners cannot repay their mortgages. If that is true, the mortgage lenders charging allegedly "below cost" loans cannot possibly recoup their below-cost investments and Plaintiff's argument defeats itself.

Plaintiff fails to allege any colorable basis for a claim under the Robinson-Patman Act, and the Third Cause of Action therefore should be dismissed under FED. R. CIV.P. 12(b)(6). Moreover, the Robinson-Patman Act is not a basis for subject matter jurisdiction.

### 4.    There Is No Private Right Of Action For The Criminal Statutes Plaintiff Cites.

Plaintiff cites several other federal criminal statutes under Title 18 of the United States Code in its First and Second Causes of Action. However, none of the federal criminal statutes under that Title convey a private right of action, absent a specific Congressional intent that they do so, and a private litigant is precluded from asserting any such claims. *Rockefeller v. United States Court of Appeals Office, For The Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C. 2003) (private right of

13

KAYE SCHOLER LLP

action under 18 U.S.C. §§ 242 and 371, relied upon by Plaintiff in this action, is impermissible).

Whether a private right of action exists is determined by Congress' intent. *Milgrom v. Burstein*, 374 F.Supp.2d 523, 529 (E.D. Ky. 2005), citing *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) and *Cannon v. University of Chicago*, 441 U.S. 677 (1979). Unless specifically provided for in the statute itself, federal criminal statutes rarely create private rights of action. *Milgrom*, 374 F.Supp. 2d at 529. Moreover, a federal Court is "without jurisdiction over the defendants when the criminal statute relied upon does not imply a private right of action." *Id.*, citing *Williams v. McCausland*, 791 F.Supp. 992, 1001 (S.D.N.Y. 1992).

Like Section § 371, the other criminal statues Plaintiff cites provide only criminal penalties and do not establish a private right of action:  18 U.S.C. § 1001 (Statements or entries generally - penalties limited to fine and/or imprisonment)[5]; § 1005 (Bank entries, reports and transactions - penalties limited to fine and/or imprisonment); § 1007 (Federal Deposit Insurance Corporation transactions - penalties limited to fine and/or imprisonment); § 1014 (Loan and credit applications generally; renewals and discounts; crop insurance - penalties limited to fine and/or imprisonment)[6]; § 1341 (Frauds and swindles - penalties limited to fine and/or imprisonment); § 1343 (Fraud by wire, radio or television - penalties limited to fine and/or imprisonment)[7]; § 1344 (Bank fraud - penalties limited to fine and/or imprisonment); § 1345 (Injunctions against fraud - limited to actions initiated by the Attorney General); § 1348 (Securities fraud - penalties limited to fine and/or imprisonment); § 1349 (Attempt and conspiracy - penalties limited to the same penalties (fine and/or imprisonment) prescribed for commission of the criminal offense under Title 18 that is the subject of the conspiracy); § 1350(b) (Failure of corporate officers to certify financial reports - penalties limited to fine and/or imprisonment).

None of the federal criminal statutes Plaintiff cites provides a private right of action.

---

[5] *See also Williams v. McCausland*, 791 F.Supp. 992, 1001 (S.D.N.Y. 1992) (citing, *inter alia*, *Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987, finding no "affirmative indication that Congress intended to furnish civil remedies").

[6] *See also Milgrom v. Burstein*, 374 F.Supp.2d 523, 528-29 (E.D. Ky. 2005) (no private right of action exists under §§ 1014 & 1344).

[7] *See also Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 407-08 (8th Cir. 1999) (no private right of action exists under §§ 1341 & 1343).

KAYE SCHOLER LLP

1   Therefore, Plaintiff can allege no colorable claim under any of those statutes, and citation to them in

2   the AC is insufficient to confer subject matter jurisdiction.  *Milgrom*, 374 F. Supp. 2d at 529.

3   **5.     Plaintiffs Allege No Colorable Claims For Securities Fraud.**

4   Plaintiff's Sixth Cause of Action for "fraudulent transaction of domestic securities; restraint

5   of trade and unfair competition" cites several provisions of the federal securities laws.

6   "At all relevant times Defendants, [*sic*] have engaged, participated, aided or

7   abetted fraudulent securities transactions; in particular the OTS's over-sight of the

8   WAMU and Providian merger.  Defendants knew or should have known by the

9   exercise of reasonable care that security violations have occurred and are occurring as

10  a result of a violation or combination of violations identified in the First through Fifth

11  causes of action.  Security violations include but are not limited to Title U.S.C. 15 §§

12  77w, 78b(3), 78i, 78k-1, 78L, 78o-6, 77uuu.  The continued violations of these laws

13  have continued to restrain trade by providing loans to borrowers who can not afford

14  said loans.  Prior damage to MB through security losses were a result of the violations

15  listed in the first through sixth causes of action.  Security losses involve and are not

16  limited to Providian, Washington Mutual and Countrywide.  These ongoing and

17  egregious acts warrant punitive damages and immediate redress."

18  *See* AC at 37:04-21.  Plaintiff, however, does not allege any elements of a claim for violation of the

19  federal securities laws, including such a basic element as standing as a buyer or seller of securities of

20  any defendant.  This failure is especially significant in light of the enhanced pleading requirements

21  of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.

22  **First**, Plaintiff does not have standing under the PSLRA to bring a securities fraud claim.

23  Plaintiff has not alleged any purchase or sale whatsoever creating any personal injury, a prerequisite

24  for standing to sue under the PSLRA.  *In re Petco Animal Supplies Inc. Securities Litigation*, 2005

25  WL 5957816, at * 36-37 (S.D. Cal. Aug. 1, 2005).  He merely alleges that the Defendants – a very

26  large and diverse group – "engaged, participated, aided or abetted fraudulent securities transactions."

27  AC at 37:04-06.  That is not sufficient to obtain standing to sue under the PSLRA, and fails to allege

28  the most basic threshold element of a federal securities fraud claim.

KAYE SCHOLER LLP

*Second*, under 15 U.S.C. § 78u-4, the PSLRA establishes special pleading requirements for federal securities fraud claims. *Foster v. Wilson*, 504 F.3d 1046, 1050 (9th Cir. 2007). "The Act requires [federal securities fraud] plaintiff to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Id.*, quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007) (bracketed phrase in original).

As in his First through Fifth Causes of Action, Plaintiff has employed a kitchen-sink approach to citing and relying on a variety of federal securities code sections. However, his factual allegations fall far short of the PSLRA's pleading requirements.

Under the PSLRA's heightened pleading standard, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1); and (2) ; 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u-4(b)(2)." *Tellabs*, 127 S.Ct. at 2508. In determining whether a federal securities fraud claim adequately alleges scienter under the PSLRA, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Foster*, 504 F.3d at 1051, citing *Tellabs*, 127 S.Ct. at 2509-11.

In "consider[ing] the complaint in its entirety," *id.*, Plaintiff has met neither of these two requirements. The sole substantive paragraph of the Sixth Cause of Action, quoted in its entirety above, fails to identify *any* statement alleged to have been misleading, much less the reasons for *why* each was misleading. The remainder of the AC likewise includes no allegations sufficient to state a claim for fraud in the sale of securities, let alone sufficient under the PSLRA. Instead, Plaintiffs' allegations involve vague and conclusory claims of misrepresentations directed not at shareholders of any corporate defendant, but at borrowers and other market participants.

For example, Plaintiff alleges:

"The Lenders induced borrowers into obtaining loans they could not afford by stating 'prices are going up; you need to buy now'. [*sic*] NIV guidelines and

16

Kaye Scholer LLP

misleading statements such as 'everyone is (inflating their incomes) doing it'
encouraged borrowers to participate in the fraud.  Advertising stating that "'Interest
rates have dropped' are the opposite of market times; 'Save 50% on your payments'
are extremely deceiving.  Misleading loan programs with unsustainably low payments
(option ARMs) falsely comforted home owners into borrowing more than they could
afford.  [ . . . ] The Agencies, Ratings and Bankers ratified the commission of the acts,
endorsed or permitted others to commit the acts alleged in this paragraph."

AC at 26:04-20.

". . . sales representative for the Lenders told borrowers that they could
refinance in a few months and would be able to obtain more favorable terms as their
homes appreciated.  These statements were untrue or misleading because the Lenders
were unlikely to provide a refinance under the terms represented by their sales
representatives."

*Id*. at 26:24 – 27:04.  Further:

"The Lenders misled borrowers about the presence and terms of prepayment
penalties on loans offered by the Lenders, and about whether prepayment penalties
could be waived for borrowers who refinance their loans."

*Id*. at 27:23 – 28:01.

"The Lenders engaged in fraud, deceptive and/or misleading acts which
resulted in Lenders obtaining inflated appraisals that were substantially in excess of
the market value.  The Agencies, Ratings and Bankers ratified the commission of the
acts, endorsed or permitted others to commit the acts alleged in this paragraph."

*Id*., at 28:06 – 12.

Tellingly, none of these allegations includes any misrepresentations to shareholders.  The
Amended Complaint contains several other such statements of very broad, generalized allegations,
absolutely none of which has anything to do with securities fraud.  Particularized *facts* supporting
allegations of fraudulent statements and *facts* supporting the inference of the Defendants' scienter is
totally missing.  In fact, the only other place in the entire Amended Complaint where Plaintiff even

17

1    mentions securities fraud is in paragraph 10, which merely cites the various securities codes under

2    Title 15 without any factual allegations whatsoever.

3        Plaintiff has not alleged a colorable claim for violations of the federal securities laws, let

4    alone sufficient to satisfy the PSLRA pleading standards.  As such, all of Plaintiff's claims involving

5    securities fraud, including specifically the Sixth Cause of Action, should be dismissed pursuant to

6    FED. R. CIV. P. 12(b)(1) & (6).

7        **D.    Plaintiff Fails To Plead Its Claims Sounding In Fraud With Sufficient**

8        **Particularity Under FED. R. CIV. P. 9(b).**

9        Federal Rule of Civil Procedure 9(b) requires that, "[i]n all averments of fraud or mistake,

10   the circumstances constituting fraud or mistake shall be stated with particularity."  Causes of action

11   that are not pleaded with the requisite specificity should be dismissed for failure to state a claim

12   pursuant to Rule 12(b)(6).  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993).  This

13   heightened pleading standard applies to fraud claims asserted in a diversity jurisdiction case such as

14   this.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Moore v. Brewster*, 96

15   F.3d 1240,1245-46 (9th Cir. 1996).

16       Rule 9(b) requires that the circumstances constituting the fraud must be alleged with

17   sufficient specificity to give defendant notice of the particular misconduct in order to defend against

18   the charge and not simply deny that it has done anything wrong.  *Vess*, 317 F.3d at 1106.  Plaintiff

19   must "specify the statements contended to be fraudulent, identify the speaker, state when and where

20   the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX*

21   *Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  Plaintiff also "must set forth *more* than the neutral

22   facts necessary to identify the transaction."  *Vess*, 317 F.3d at 1106.  The plaintiff must set forth

23   what is false or misleading about a statement, and why it is false.  *Id*.

24       Each of the claims under the AC is based on alleged fraud and misleading statements and

25   advertising.  The Fourth Cause of Action for fraud and conspiracy in restraint of trade and the Sixth

26   for fraudulent securities transactions are based on bare allegations of fraud.  The remaining four

27   Causes of Action also rely heavily on allegations of fraud.  Elsewhere in the Amended Complaint,

28   Plaintiff extensively refers to, for example, "[o]verwhelming evidence of fraud" (AC at p. 7:08), and

KAYE SCHOLER LLP

18

1    that the Defendants are "participating in the fraud" (*id*. at p. 8:02-03)

2        With respect to Experian, Plaintiff alleges nothing more than that Experian is the parent of

3    LowerMyBills.com and that LowerMyBills.com made "extremely misleading advertising." *See* AC

4    at 12:21.  Plaintiff has merely claimed that Experian's subsidiary, LowerMyBills.com, engaged in

5    unspecified "misleading advertising" and later grouped Experian together with all other defendants

6    in this action, alleging that all participated in "fraud."  That is the sum total of Plaintiff's allegations

7    about Experian's alleged fraud.  Plaintiff has alleged no facts, let alone specific facts, in support of

8    his bare allegation of fraud against Experian, or even its subsidiary LowerMyBills.com.

9        Plaintiff has identified no *specific* advertising or statements, or the time, date and location at

10   which they are alleged to have been made.  *In re Glenfed*, 42 F.3d at 1548 n.7.  Plaintiff also has

11   identified no individual at either Experian or LowerMyBills.com that he contends is responsible for

12   having made each particularized statement or authorized each particularized advertisement.  *Vess*,

13   317 F.3d at 1106.  Plaintiff does not even identify to whom it claims the fraudulent conduct was

14   aimed.  The same is even more true with respect to Experian.  Instead, Plaintiff has broadly swept

15   Experian into generalized and vague claims of fraudulent conduct, without differentiation.

16       Plaintiff simply claims that Experian, as part of a group of defendants, engaged in "fraud"

17   and that its subsidiary - for which Experian is not liable - engaged in some unspecified "misleading

18   advertising."  Such broad and conclusory allegations of fraud do not satisfy Rule 9(b).  *See, e.g.,*

19   *Buford v. Howe*, 10 F.3d 1184, 1188 (5th Cir. 1994) (fraud complaint did not contain particular and

20   specified allegations of fraudulent activity satisfying Rule 9(b)'s minimum standards of alleging "the

21   particulars of time, place and contents of the false representations").  Plaintiff has failed to identify

22   the "who, what, when, where and how" required by Rule 9(b) in pleading a claim for fraud.  Plaintiff

23   has failed to state a claim for fraud on which relief may be granted, and this Court should dismiss

24   Plaintiff's Amended Complaint in its entirety pursuant to FED. R. CIV.P. 12(b)(6).

25   **E.    Without Diversity Or Federal Question Jurisdiction, The Court Should Not**

26   **Hear The State Law Claims.**

27       Where, as here, a federal Court lacks subject matter jurisdiction over a claim, the complaint

28   in its entirety must be dismissed, including any supplemental state law claims.  *Arbaugh v. Y&H*

19

KAYE SCHOLER LLP

1  *Corp.*, 546 U.S.500, 514, 126 S.Ct. 1235, 1244-45 (2006).

2  **III.    CONCLUSION.**

3        For the reasons stated herein, Experian respectfully requests that the Court dismiss the

4  Plaintiff's Amended Complaint in its entirety or, in the alternative, dismiss Experian individually

5  from the Amended Complaint, with prejudice.

6

7

8  DATED:  May 12, 2008                          KAYE SCHOLER LLP

9

10                                               By:_____//S//_____
11                                               J. Raymond Warner
                                                 Attorneys for Defendant EXPERIAN
12                                               HOLDINGS, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23244793.DOC    DEFENDANT EXPERIAN'S MOTION TO DISMISS C07-04108 JF