1  Mark T. Flewelling (#096465)
   mflewelling@afrct.com
2  Christopher A. Carr (#44444)
   ccarr@afrct.com
3  Robin C. Campbell (#070374)
   rcampbell@afrct.com
4  ANGLIN, FLEWELLING, RASMUSSEN
   CAMPBELL & TRYTTEN LLP
5  199 South Los Robles Ave., Suite 600
   Pasadena, California 91101
6  Tel: 626.535.1900
   Fax: 626.577.7764
7
   Attorneys for Defendants
8  Wachovia Corporation; Ken Thompson;
   and Herbert M. Sandler
9

10              UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE BRANCH

12

13  MICHAEL BLOMQUIST,                    C-07-04108-JF/HRL

14              Plaintiff,               NOTICE OF MOTION AND
                                         MOTION BY DEFENDANTS
15      vs.                              WACHOVIA CORPORATION,
                                         KEN THOMPSON AND
16  WASHINGTON MUTUAL, a                 HERBERT M. SANDLER TO
    Washington corporation; KERRY K.     DISMISS FOR LACK OF
17  KILLINGER; JOSEPH W.                 STANDING; MEMORANDUM
    SAUNDERS; COUNTRYWIDE HOME           OF POINTS AND
18  LOANS, INC., a Delaware corporation; AUTHORITIES
    ANGELO MOZILO; WACHOVIA
19  CORPORATION, a North Carolina
    corporation; KEN THOMPSON;
20  CITIGROUP, a Delaware corporation;
    SANFORD WEILL; CHARLES               Date:    July 11, 2008
21  PRINCE; GOLDMAN SACHS GROUP,         Time:    9:00 a.m.
    INC., a Delaware corporation; HENRY  Crtrm:   3
22  PAULSON; BEAR STERNS
    COMPANIES, INC., a Delaware
23  corporation; JAMES CAYNE; THE
    MCGRAW HILL COMPANY, INC., a
24  Delaware corporation; HAROLD
    MCGRAW III; WELLS FARGO &
25  COMPANY, a Delaware corporation;
    PATRICIA R. CALLAHAN;
26  HERBERT M. SANDLER; ROCK
    HOLDINGS, INC., a Delaware
27  corporation; EXPERIAN
    CORPORATION, a Delaware
28  corporation; FIMALAC, INC., a

1  Delaware corporation; MOODYS
   CORPORATION, a Delaware
2  corporation; JAMES E. GILLERAN;
   JOHN M. REICH; JOHN D. HAWKE,
3  JR.; JOHN C. DUGAN; SUSAN
   SCHMIDT BIES; DONALD E.
4  POWELL; SHEILA C. BAIR;

5
                    Defendants.
6

7  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

8          PLEASE TAKE NOTICE that on July 11, 2008, at 9:00 a.m., or as soon

9  thereafter as counsel may be heard in Courtroom 3 of the United States District

10 Court, located at 280 South First Street, San Jose, California, the Honorable Jeremy

11 Fogel presiding, defendants Wachovia Corporation, G. Kennedy Thompson

12 (incorrectly named herein as Ken Thompson) and Herbert M. Sandler will move to

13 dismiss the First Amended Complaint in the above-captioned action.

14         Said motion is brought under Rule 12(b)(6) of the Federal Rules of Civil

15 Procedure on the grounds that plaintiff lacks standing to bring this action; under

16 Article III of the United States Constitution and Rule 12(b)(1) of the Federal Rules

17 of Civil Procedure on the grounds that the First Amended Complaint does not

18 present a case or controversy over which this Court has subject matter jurisdiction;

19 and under Rule 8(a) of the Federal Rule of Civil Procedure on the grounds that the

20 First Amended Complaint does not present a short and plain statement of the claim

21 showing the pleader is entitled to relief.

22

23

24

25

26

27

28

1

2      Said motion to dismiss will be based upon this notice, the accompanying

3   memorandum of points and authorities, the remaining records, pleadings and papers

4   on file in this action, and all oral and documentary evidence as may be presented at

5   the hearing.

6                                      Respectfully Submitted,

7   Dated: May 12, 2008               ANGLIN, FLEWELLING, RASMUSSEN,
                                       CAMPBELL & TRYTTEN LLP
8

9
                                       By:  /s/ Christopher A. Carr
10                                          Mark T. Flewelling
                                           Christopher A. Carr
11                                          Robin C. Campbell
                                       Attorneys for Defendants WACHOVIA
12                                     CORPORATION, KEN THOMPSON and
                                       HERBERT M. SANDLER
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C-07-04108-JF/HRL
                                                        MOTION TO DISMISS [NO STANDING]

# **TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................... 1

1.    INTRODUCTION ................................................................................ 1

    A.    STATEMENT OF ISSUES TO BE DECIDED ................................. 2

    B.    STATEMENT OF RELEVANT FACTS:  THE
        ALLEGATIONS OF THE FIRST AMENDED COMPLAINT .......... 2

2.    PLAINTIFF BLOMQUIST HAS NO STANDING TO BRING
    CLAIMS FOR INJURIES SUFFERED BY BORROWERS, SINCE
    PLAINTIFF IS NOT A BORROWER HIMSELF. ......................................... 5

3.    PLAINTIFF'S OWN ALLEGED INJURIES DO NOT GIVE HIM
    STANDING TO BRING ANY OF THE CLAIMS ASSERTED BY
    HIS FIRST AMENDED COMPLAINT .................................................... 6

4.    PLAINTIFF LACKS FEDERAL STANDING TO ASSERT CLAIMS
    UNDER CALIFORNIA'S UNFAIR COMPETITION LAW, FALSE
    ADVERTISING LAW, OR UNFAIR TRADE PRACTICES LAW ............. 8

5.    PLAINTIFF ALSO LACKS STANDING TO ASSERT ANTITRUST
    CLAIMS AGAINST THE DEFENDANTS FOR "RESTRAINT OF
    TRADE" ................................................................................................ 9

6.    CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

American Add Management, Inc. v. General Telegraph Co., 190 F.3d 1051
(9th Cir. 1999)................................................................................10

Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133 (C.D. Cal. 2005)...................9

Associated General Contractors v. Cal. State Council of Carpenters, 459 U.S.
519, 1038 S. Ct. 897, 74 L. Ed. 723 (1983)................................10

Bahn v. NME Hospital, Inc., 772 F.2d 1467 (9th Cir. 1985)................................10

Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc., (1979) 429 U.S. 477, 97 S.
Ct. 690, 50 L. Ed. 2d 701........................................................11

Lee v. American National Insurance Company, 260 F.3d 997 (9th Cir. 2001)....6, 9

Lujan v. Secretary of the Interior, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed.
2d 351 (1992)........................................................................6, 8

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd., 269 F. Supp. 2d 1213
(C.D. 2003)................................................................11, 12

Quality Automobile Body, Inc. v. Allstate Insurance Co., 660 F.2d 1195 (7th
Cir. 1981)................................................................................10

Security Fire Door Company v. County of Los Angeles, 484 F.2d 1028 (9th
Cir. 1973)................................................................................10

Valley Forge Christian College v. Americans United for Separation of
Church and State, 454 U.S. 464, 102 S. Ct. 752, 770 L. Ed.
2d 700 (1982)........................................................................7

**STATE CASES**

G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256 (1983).................................10

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 8(a).........................................................1

U.S.C. 15 §§77w, 78b(3), 78i, 78j, 78k-l, 78L, 78o-6................................7

**MISCELLANEOUS**

*Business and Professions Code* §17200 et.seq. (the "UCL")....................8

*Business and Professions Code* §17500 et.seq. (the "FAL")...................8

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

3    **1.    INTRODUCTION**

4        This action involves the subprime residential mortgage market and presents

5    allegations that seem virtually ripped from today's headlines.  Plaintiff Michael

6    Blomquist ("Blomquist") has named a lengthy list of defendants made up of

7    lending institutions and their executives, rating institutions and government

8    agencies.  According to his First Amended Complaint ("FAC"), these defendants

9    pursue lending practices and related policies that have led to the current subprime

10   mortgage crisis, and "will not only devastate America, but could bring about the

11   next global depression, especially if these practices are not stopped now." (FAC ¶9)

12   The FAC seeks to enlist the resources of this Court to take immediate corrective

13   action.

14       It is hard to imagine that the FAC could have strayed any further from the

15   directive in Federal Rule of Civil Procedure 8(a) to provide "a short and plain

16   statement of the claim showing that the pleader is entitled to relief."  Most of the

17   FAC's 40 pages are devoted to an extended treatise by plaintiff Blomquist about

18   how and why America became trapped in a subprime mortgage meltdown.

19       Yet out of plaintiff's myriad accusations a central theme does seem to

20   emerge.  Plaintiff claims that the defendants misled borrowers into choosing non-

21   traditional mortgage loans that they could not afford, with the result that these

22   borrowers have now defaulted or are unable to satisfy their monthly loan payments

23   as they fall due.

24       But plaintiff Blomquist is not one of the troubled borrowers.  Instead,

25   according to his FAC, plaintiff is a real estate agent who claims to have refused to

26   direct his own customers toward the non-traditional loans that he now faults for the

27   current difficulties in the financial and housing markets.  None of the borrowers

28   asserted to be suffering from their choice of a non-traditional loan is a party to this

1   action.

2       Plaintiff could only have standing to bring claims arising out of the

3   defendants' lending practices if plaintiff himself had been directly damaged by

4   these practices.  But the FAC shows this is not the case.  Plaintiff is at most an

5   interested, but uninjured, third party. No matter how strong plaintiff's interest in the

6   plight of the borrowers, that interest does not give him standing to seek judicial

7   relief or give this Court jurisdiction to his grant his requested relief.

8

9   **A.    STATEMENT OF ISSUES TO BE DECIDED**

10      The single issue to be decided pursuant to this motion is whether moving

11  defendants Wachovia Corporation, Ken Thompson and Herbert M. Sandler should

12  be dismissed from this action by reason of plaintiff Blomquist's lack of standing to

13  bring and the corresponding lack of subject matter jurisdiction by this Court to

14  consider the claims asserted against these moving defendants in the FAC.

15

16  **B.    STATEMENT OF RELEVANT FACTS:  THE ALLEGATIONS OF
        THE FIRST AMENDED COMPLAINT**

17      The FAC names some thirty separate persons and entities as defendants.  In

18  an effort to bring some organization to the scattered accusations directed against

19  these defendants, paragraph 33 of the FAC divides the defendants into five

20  subgroups: "Lenders," "Bankers," "Executives," "Ratings," and "Agencies."

21  Moving defendant Wachovia is placed within the "Lenders" subgroup, while

22  moving defendants Thompson and Sandler are "Executives."

23      The FAC sets forth six claims for relief, labeled the "First Cause of Action"

24  through the "Sixth Cause of Action."  The first four of these claims of relief are

25  brought pursuant to an assortment of federal statutes plus selected sections from the

26  *California Civil Code*, *Financial Code* and/or *Business and Professions Code*,

27  alleging (1) false or deceptive statements that restrain trade and create unfair

28

C-07-04108-JF/HRL
MOTION TO DISMISS [NO STANDING]

1    competition; (2) unsafe and unsound lending that restrains trade and creates unfair

2    competition; (3) sale of products below cost to restrain trade and create unfair

3    competition; and (4) fraud and conspiracy that restrains trade and creates unfair

4    competition.  The fifth and sixth claims of the FAC are brought solely under federal

5    law, and allege: (5) a failure by the "Agencies" defendants to properly supervise

6    lending and banking institutions; and (6) fraudulent transactions in domestic

7    securities.

8        Moving defendants Wachovia, Thompson and Sandler are not among the

9    defendant "Agencies" against which the "Fifth Cause of Action" is directed.  That

10    claim for relief will be therefore disregarded for purposes of this motion.

11        In the remaining five claims that make up the FAC, plaintiff accuses all

12    defendants of having engaged in "unconscionable, unfair, deceptive and fraudulent

13    ('unlawful') lending and securities activities." (FAC ¶3) These activities allegedly

14    involved the sale of "stated income" or "no income verification" loans ("NIV

15    loans"), option adjustable rate mortgage loans ("option ARMs"), 100% financing,

16    plus various related practices.

17        Plaintiff Blomquist alleges that he "has been a licensed mortgage and real

18    estate agent since 1992" (FAC ¶2) and that his "clients, referrals and prospective

19    clients were enticed to and transacted business with the Defendants" in the course

20    of which these "borrowers were coerced to participate in unlawful acts, omissions

21    and fraudulent statements to purchase over-priced, unaffordable homes" (FAC ¶5)

22    as a result of Defendants' lending practices.

23        The challenged lending and securities practices commenced in 2004 (FAC

24    ¶10) when the NIV guidelines were relaxed to allow any wage earner receiving a

25    Form W-2 to apply for a NIV loan.  As a consequence, an alleged 94% of all NIV

26    loans are now based on inflated borrower incomes. (FAC ¶35)  Plaintiff further

27    asserts that option ARM worksheets configured when interest rates are low are

28    inherently misleading, and that 90% of option ARM borrowers can only make the

1  minimum payments. (FAC ¶¶36, 37)  Plaintiff also claims that the borrowers

2  choosing 100% financing were unaware of the potential, significant income tax

3  liability that could be imposed upon them following foreclosure. (FAC ¶38)

4  Finally, plaintiff alleges that "risk layering," the combined packaging of these loan

5  products, is unsafe for borrowers and lenders. (FAC ¶39)

6       The Prayer of the FAC seeks various types of highly unconventional

7  equitable relief.  Briefly stated, the Prayer asks that this Court:

8            (1)   Enjoin defendants from making any "misleading, untrue, and/or

9  deceptive statements" as alleged in the FAC;

10           (2)   Enjoin defendants from selling products below cost;

11           (3)   Order defendants' executives to disgorge "all unlawful profits,"

12 which will then be used to help displaced homeowners locate shelter;

13           (4)   Order defendants to pay $10 million to a court-appointed

14 conservator to be used to fund plaintiff's non-profit organization which shall serve

15 the dual purpose of (i) helping defaulting homeowners and troubled lenders sell

16 their homes, and (ii) providing plaintiff an "equitable annual salary;"

17           (5)   Award plaintiff his costs of suit;

18           (6)   Relieve homeowner borrowers of any liability for fraud as well

19 as any liability to the IRS for any taxable gain following foreclosure; and

20           (7)   Terminate defendants' executives guilty of wrongdoing from

21 their positions of employment, and adjust the compensation of defendants'

22 remaining executives.

23       Nearly all of the injuries alleged in the FAC were suffered by borrowers, just

24 as nearly all of the relief requested by the FAC would go to borrowers.  The FAC

25 suggests only two possible ways in which non-borrowers like plaintiff Blomquist

26 might have been damaged as well.

27       Plaintiff first alleges in FAC paragraph 6 that he purchased certain securities

28 (plaintiff does not identify what securities these were) anticipating they would rise

4

1 in value along with a decrease in the value of Defendants' stock due to defendants'

2 unlawful activities. Plaintiff's expectations apparently never materialized, and

3 plaintiff later sold his unidentified securities at a loss. But conspicuously missing

4 from this claim of securities losses by plaintiff is any involvement by the

5 defendants. No causal connection is asserted between plaintiff's securities losses

6 and defendants' "securities fraud" alleged in the "Sixth Cause of Action" or any

7 other purported wrongdoing.

8      Second, plaintiff claims that he and other brokers "working within the

9 boundaries of the law and fiduciary duties" (FAC ¶47) experienced "restrained

10 trade" due to their decision not to refer borrower customers to the defendants for

11 loans. Plaintiff's use of the phrase "restrained trade" to describe his refusal to do

12 business with the defendants is the full extent of his attempt to frame an antitrust

13 violation. There is no allegation in the FAC of anti-competitive activity by the

14 defendants or of any other element necessary to state an antitrust claim under

15 federal or California law.

16      Because the FAC reveals on its face that plaintiff Blomquist has not suffered

17 any damage that gives him standing to bring the claims asserted in the FAC, each of

18 the demurring defendants should be dismissed from this action.

19

20 **2.    PLAINTIFF BLOMQUIST HAS NO STANDING TO BRING CLAIMS**
21 **FOR INJURIES SUFFERED BY BORROWERS, SINCE PLAINTIFF**
**IS NOT A BORROWER HIMSELF.**

22      Plaintiff Blomquist alleges he has "witnessed rampant exploitation of

23 consumers, real estate values and market stability through unconscionable, unfair,

24 deceptive and fraudulent ('unlawful') lending and securities activities" (FAC ¶3) by

25 the defendants that have enticed purchasers of real estate to enter loans they could

26 not afford. Plaintiff believes that his close-up view of this activity from the vantage

27 of a "licensed mortgage and real estate agent" (FAC ¶2) permits him to champion

28 the cause of these borrowers.

C-07-04108-JF/HRL
MOTION TO DISMISS [NO STANDING]

1    Yet plaintiff has no standing to assert claims based upon the harm suffered

2  by third parties. This lack of standing is no minor defect. As the United States

3  Supreme Court declared in *Lujan v. Secretary of the Interior*, 504 U.S. 555, 560,

4  112 S.Ct. 2130, 2136, 119 L.Ed. 2d 351, 364 (1992), "The core component of

5  standing is an essential and unchanging part of the case-or-controversy requirement

6  of Article III."

7    Article III of the Constitution imposes jurisdictional limitations that "require

8  a plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

9  challenged conduct." *Lee v. American National Insurance Company*, 260 F.3d 997,

10  1001 (9th Cir. 2001). The injury that the plaintiff has suffered must be an "injury in

11  fact," being both "concrete and particularized." This is an "irreducible

12  constitutional minimum of standing." *Lujan, supra*, 504 U.S. at 560.

13    All of the injuries alleged by the FAC to have resulted from defendants'

14  "unsafe" or "unsound" lending practices were suffered by borrowers in the

15  subprime lending market. Plaintiff Blomquist did not personally absorb any of

16  these losses. He has no federal standing to seek redress for injuries to the

17  borrowers; and this Court lacks jurisdiction to consider his claims.

18

19  **3.    PLAINTIFF'S OWN ALLEGED INJURIES DO NOT GIVE HIM
        STANDING TO BRING ANY OF THE CLAIMS ASSERTED BY HIS
20      FIRST AMENDED COMPLAINT**

21    Plaintiff Blomquist claims that he experienced "restrained trade" as a result

22  of his refusal to engage in what he considered to be unsafe lending practices by the

23  defendants. Yet this alleged injury does not suffice to give plaintiff standing to

24  challenge those lending practices in federal court.

25    Essential to federal standing is a "causal connection" between the plaintiff's

26  injury and the conduct by the defendants of which plaintiff complains, such that the

27  injury is "fairly traceable to the challenged action of the defendant." *Lujan, supra*,

28  504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed. 2d at 364. Plaintiff Blomquist's

1   "restrained trade" from a refusal to do business with the defendants has, at most, an

2   indirect or attenuated connection to the alleged lending practices of the defendants.

3   It is wholly insufficient to give plaintiff standing to bring an action in federal court.

4       The only other injury claimed by plaintiff Blomquist is "security losses"

5   from trading in certain unidentified stocks. Yet nothing that defendants did or failed

6   to do is alleged to have caused these losses.  Plaintiff Blomquist reveals at

7   paragraph 6 of the FAC that he purchased his securities voluntarily and with full

8   awareness of the "unlawful" and "unsustainable" loan activities conducted by the

9   defendants, speculating that his securities would rise in value along with a

10  corresponding decrease in the value of the defendants' stocks.  Plaintiff does not

11  claim that he was wrongfully induced by the defendants to purchase any of these

12  securities or even that any of these securities were stocks issued by the defendants.

13  In fact, he alleges the opposite.

14      Later, in his sixth cause of action for securities fraud, plaintiff Blomquist

15  claims that the defendants committed "fraudulent securities transactions" in

16  violation of various federal statutes (identified as U.S.C. 15 §§77w, 78b(3), 78i,

17  78j, 78k-l, 78L, 78o-6, and 77uuu) "by providing loans to borrowers who cannot

18  afford said loans." (FAC ¶69).  But there is no causal connection between this

19  alleged securities fraud by defendants in the course of their loan activities and the

20  losses which plaintiff claims to have suffered from his own securities trades.

21      It makes no difference that the FAC shows plaintiff Blomquist to be

22  passionately opposed to defendants' lending practices or that he contends these

23  practices have caused widespread suffering by borrowers in the subprime mortgage

24  market. As the United States Supreme Court observed in *Valley Forge Christian*

25  *College v. Americans United for Separation of Church and State*, 454 U.S. 464,

26  486, 102 S.Ct. 752, 766, 770 L.Ed. 2d 700, 718 (1982), "standing is not measured

27  by the intensity of the litigant's interest or the fervor of his advocacy."  The only

28  persons having standing to bring the claims for relief to borrowers asserted in the

1    FAC are the borrowers themselves.

2        One final "irreducible constitutional minimum" for standing is that it be

3    likely, and not merely speculative, that the plaintiff's injuries will be redressed by a

4    favorable decision. *Lujan, supra*, 504 U.S. at 561, 112 S.Ct. at 2136, 119 L.Ed. 2d

5    at 364.  There is no such likelihood here.  While a great variety of relief is requested

6    in the Prayer of the FAC, nearly all of it seeks to assist borrowers in the subprime

7    market to recover losses suffered from mortgage loans with the defendants.  None

8    of the requested relief would redress any "restrained trade" from plaintiff's refusal

9    to deal with the defendants, or the securities losses that plaintiff claims to have

10    suffered while attempting to profit from defendants' activities.

11

12    **4.    PLAINTIFF LACKS FEDERAL STANDING TO ASSERT CLAIMS
              UNDER CALIFORNIA'S UNFAIR COMPETITION LAW, FALSE**
13    **        ADVERTISING LAW, OR UNFAIR TRADE PRACTICES LAW**

14        The FAC repeatedly asserts that the defendants committed "unsafe,"

15    "unsound," or "unlawful" lending practices to lure American borrowers to enter

16    into subprime mortgage loans they could not afford.  It maintains that these lending

17    practices warrant injunctive relief and restitution pursuant to California's Unfair

18    Competition Law at *Business and Professions Code* §17200 et.seq. (the "UCL")

19    and False Advertising Law at *Business and Professions Code* §17500 et.seq. (the

20    "FAL").

21        Here too, plaintiff Blomquist lacks standing to bring these claims.  He is not

22    a borrower unable to repay a subprime mortgage loan obtained from one of the

23    defendants.  He therefore cannot seek relief under the UCL or FAL from the

24    injuries allegedly suffered by such borrowers.

25        Prior to the enactment of Proposition 64 in 2004, a plaintiff might have

26    brought suit under the UCL or FAL for injunctive relief or restitution as a "private

27    attorney general," without having suffered any injury from the prohibited acts.

28    However, Proposition 64 brought amendments Sections 17204 and 17535 of the

C-07-04108-JF/HRL
MOTION TO DISMISS [NO STANDING]

1   *Business and Professions Code* that now mandate private persons asserting claims

2   under the UCL or FAL must have themselves "suffered injury in fact" and "lost

3   money or property" as a result of the alleged statutory violations. *Anunziato v.*

4   *eMachines, Inc.*, 402 F.Supp.2d 1133, 1136-1137 (C.D. Cal. 2005).  Plaintiff

5   Blomquist does not qualify.

6       Furthermore, the "case and controversy" jurisdictional limitations at Article

7   III of the Constitution (discussed at length in Section 1 above), require every

8   plaintiff in a federal court action to show an actual injury from the defendant's

9   challenged conduct.  Even Pre-Proposition 64 claims under the UCL or FAL, which

10  an uninjured party was allowed to pursue as a "private attorney general" in the

11  California state courts, could not be brought by an uninjured party in the federal

12  courts due to the lack of Article III standing. *Lee v. American National Insurance*

13  *Company*, 260 F.3d 997, 1001-1002 (9th Cir. 2001).

14      Plaintiff Blomquist thus has no Article III standing to bring claims for

15  "selling loans below cost" pursuant to California's Unfair Trade Practices Act at

16  sections 17043 and 17071 of the *Business and Professions Code*.  These claims

17  appear in the "Third Cause of Action" of his FAC.  Even assuming that a loan

18  qualifies as an "article or product" that Sections 17043 and 17071 prohibit from

19  being sold below cost (which is doubtful), the FAC does not allege that plaintiff

20  himself personally suffered any injury from defendants' alleged sales of loans

21  below cost.

22

23  **5.    PLAINTIFF ALSO LACKS STANDING TO ASSERT ANTITRUST**
        **CLAIMS AGAINST THE DEFENDANTS FOR "RESTRAINT OF**
24      **TRADE"**

25      The FAC repeatedly alleges that defendants' unsound lending practices

26  "restrained trade" for plaintiff and other mortgage brokers.  But, despite its

27  considerable length, the FAC has very little to say about what it was the defendants

28  purportedly did to "restrain trade." The sole explanation it offers is that the

1   defendant lenders acted "to restrain trade by providing loans to borrowers who

2   cannot afford said loans" (FAC ¶69) and that this, in turn, "would restrain trade for

3   businesses not willing to participate in unlawful activities" (FAC ¶66) by reason of

4   their "legal, fiduciary, ethical, and moral conflicts." (FAC ¶4)

5       In other words, plaintiff claims he lost business because he chose not to

6   direct potential borrowers to the defendants.  Does his alleged decision not to refer

7   his clients to the defendants for mortgage loans now give plaintiff standing to assert

8   multiple antitrust claims against those defendants under state and federal antitrust

9   statutes?

10      Nothing in the FAC suggests that the defendants ever made mortgage loans

11  other than in an environment of open competition among lending institutions.  Such

12  competition is encouraged by the antitrust laws, not condemned by them.  *Quality*

13  *Auto Body, Inc. v. Allstate Ins. Co.*, 660 F.2d 1195, 1203 (7th Cir. 1981). "The

14  proscription against restraint of trade seeks only to assure that the choice of a

15  product has been made freely under competitive conditions rather than in response

16  to anti-competitive factors such as coercion or agreements not to compete." *G.H.I.I.*

17  *v. MTS, Inc.,* 147 Cal.App.3d 256, 269 (1983); *Security Fire Door Company v.*

18  *County of Los Angeles*, 484 F.2d 1028, 1030 (9th Cir. 1973).

19      The antitrust laws do not provide a remedy to every party injured by

20  unlawful economic conduct. "As commentators have observed, the focus of the

21  doctrine of 'antitrust standing' is somewhat different from that of standing as a

22  constitutional doctrine.  Harm to the antitrust plaintiff is sufficient to satisfy the

23  constitutional standing requirement of injury in fact, but the court must make a

24  further determination whether the plaintiff is a proper party to bring a private

25  antitrust action" *Associated General Contractors v. Cal. State Council of*

26  *Carpenters*, 459 U.S. 519, 536 n.31, 103 S.Ct. 897, 74 L.Ed. 723 (1983).

27      Whether a plaintiff has standing to bring an antitrust claim depends largely

28  upon the nature of the plaintiff's alleged injury and whether it is of the type the

C-07-04108-JF/HRL
MOTION TO DISMISS [NO STANDING]

1    antitrust laws were intended to prevent. *American Ad Mgmt., Inc. v. General Tel.*

2    *Co.,* 190 F.3d 1051, 1054-1055 (9th Cir. 1999). Because the essential purpose of

3    the antitrust laws is to protect competition for the benefit of consumers, *Associated*

4    *General Contractors, supra,* 459 U.S. at 538, an essential requirement for standing

5    to assert an antitrust claim is that the "injured party be a participant in the same

6    market as the alleged malefactors." *Bahn v. NME Hosp., Inc.,* 772 F.2d 1467, 1470

7    (9th Cir. 1985).

8        Plaintiff Blomquist is not a direct participant in the mortgage loan market.

9    He is not a competitor of the defendants, since he does not make mortgage loans.

10   Neither is he a customer in that market, since he is not a borrower. His only

11   relationship with the mortgage loan market is a derivative one. As a real estate

12   agent, plaintiff helped arrange loans by his clients from mortgage lenders of the

13   funds they needed to complete purchases of real estate.

14       Yet the agency function which plaintiff performed for these borrowers is not

15   enough to give him standing to assert antitrust claims against the defendant lenders.

16   "[A] party does not have standing simply because it has a commercial relationship

17   with a market participant, thereby giving it an economic interest in avoiding

18   restraint of the relevant market by a third party." *Metro-Goldwyn-Mayer Studios,*

19   *Inc. v. Grokster Ltd.,* 269 F.Supp.2d 1213, 1221 (C.D. 2003).

20       Not only must the plaintiff be a market participant, the plaintiff must also

21   have suffered an injury that "should reflect the anti-competitive effect either of the

22   violation or of the anti-competitive acts made possible by the violation. It should, in

23   short, be the type of loss that the claimed violations . . . would be likely to cause."

24   *Brunswick Corp. v. Pueblo-Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690,

25   697, 50 L.Ed. 2d 701 (1977). Here, plaintiff Blomquist's alleged injury from

26   "restrained trade" does not qualify him for antitrust standing. His claimed loss of

27   business volume resulted from his own decision not to refer clients to the defendant

28   lenders, rather than from some anti-competitive aspect of defendants' lending

1   practices.  The FAC does not allege that any of the defendants' lending activities

2   produced any restraint upon competition or otherwise negatively impacted

3   competition within the mortgage loan market.

4           Yet even if the FAC did assert some anti-competitive scheme by the

5   defendants, plaintiff's alleged loss of business as a mortgage broker would at most

6   be "incidental, and not integral" to that scheme, *Metro-Goldwyn-Mayer Studios,*

7   *supra,* 269 FSupp2d at 1221. Such incidental injuries will not support standing to

8   bring an antitrust claim.

9

10  **6.     CONCLUSION**

11          The FAC fails to allege that plaintiff Blomquist has suffered an injury in fact

12  that bears any causal connection to some wrongdoing by the defendants.  Plaintiff

13  therefore lacks the required standing to bring this action, and each of his claims

14  against the moving defendants should be dismissed.

15

16                                  Respectfully Submitted,

17  Dated:  May 12, 2008            ANGLIN, FLEWELLING, RASMUSSEN,
                                    CAMPBELL & TRYTTEN LLP

18

19                                  By:  /s/ Christopher A. Carr
                                        Mark T. Flewelling
20                                      Christopher A. Carr
                                        Robin C. Campbell
21                                  Attorneys for Defendants WACHOVIA
                                    CORPORATION; KEN THOMPSON; and
22                                  HERBERT M. SANDLER

23

24

25

26

27

28

C-07-04108-JF/HRL
MOTION TO DISMISS [NO STANDING]