Michael Blomquist
18234 Daves Avenue
Los Gatos, CA 95030
(408) 399-0590
michaelsblomquist@gmail.com
Pro se plaintiff

*E-Filed 07/08/08*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| Michael Blomquist, | ) Case No.: C07-04108 JF |
| Plaintiff, | ) BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS |
| vs. | ) |
| WASHINGTON MUTUAL, a Washington corporation; KERRY K. KILLINGER; JOSEPH W. SAUNDERS; COUNTRYWIDE HOME LOANS, INC. a Delaware corporation; ANGELO MOZILLO; WACHOVIA CORPORATION, a North Carolina corporation; KEN THOMPSON CITIGROUP, a Delaware corporation; SANFORD WEILL; CHARLES PRINCE; GOLDMAN SACHS GROUP, INC., a Delaware corporation; HENRY PAULSON; BEAR STERNS COMPANIES, INC., a Delaware corporation; JAMES CAYNE; THE MCGRAW HILL COMPANY, INC., a Delaware corporation; HAROLD MCGRAW III; WELLS FARGO & COMPANY, a Delaware corporation; PATRICIA R. CALLAHAN; HERBERT M. SANDLER; ROCK HOLDINGS, INC., a Delaware corporation; EXPERIAN CORPORATION, a Delaware corporation; JAMES E. GILLERAN; JOHN M. REICH; JOHN D. HAWKE JR.; JOHN C. DUGAN; SUSAN SCHMIDT BIES; DONALD E. POWELL; SHEILA C. BAIR; | ) |
| Defendants. | ) |

1

BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

As requested by prayer; plaintiff would rather assist with solutions than waste valuable time litigating this case. Plaintiff is open to ADR.  Plaintiff acknowledges defendants' concerns about standing and plaintiff would agree with defendants on this issue if this case involved a typical fraudulent scheme; clearly this scheme is not.  Plaintiff cites the following persuasive authority, 313 F.2d 445, Shull v Pilot Life Insurance, "We repeat again [*447] what we have said before that within these very broad guide lines, a dismissal with prejudice on the 'basis of bare bones pleadings is a tortuous thing." The case continues id., "Exploiting the wonderful facility of pretrial discovery, the real facts can be ascertained and by motion for summary judgment (or other suitable device), the trial Court [**4] can determine whether as a matter of law there is any right of recovery on those facts." In essence plaintiff again alleges that this is a case of first impression and the court is respectfully requested to treat it as such.

Plaintiff maintains that the prosecution of his claims can be swift through limited discovery provided by IRS form 4506. Plaintiff has maintained and redirects attention to facts involving the case, housing market and allegations in the active complaint.

The legal theory behind plaintiff's claims are easily recognized and summarized by record foreclosures amidst the backdrop of historically low interest rates and unemployment. Fraud of biblical proportions is the obvious creator of this crisis and plaintiff's allegations of unlawful restraint of commerce, securities fraud, UCL, FAL and unjust enrichment.

Although plaintiff's filings are inartistic and lack copious, off point Westlaw links, plaintiff does provide other links for the courts and a preponderance of evidence to substantiate his claims.  Plaintiff will address this matter in more detail during July 11, 2008 hearing.  Plaintiff will also verbally argue all motions to dismiss during the same hearing.

In addition to frivolous citations, it is quite obvious that the defendants will stop at nothing to have the case thrown out on a technicality.  Perhaps there were/are other motives, but why would an interested party not provide, at minimum, a temporary email account for notification when the case is set for ECF.  It is again duly noted that McGraw Hill defendants were the only defendants who opposed motion to enlarge time/postpone hearing.

Defendants have cited issues from *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc*.  Defendant's citation has once again provided more valid authority for plaintiff's claims than the defendants'

3

BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

motions.  McGraw Defendants quoted "there is no private right of action for aiding and abetting a § 10(b) violation." 128 S. Ct. 761, 767 (2008); this is blatant manipulation and incorrect citation of case law.  A cursory look at Stoneridge will also provide, "The securities statutes provide and express private right of action against accountants and underwriters in certain circumstances, 15 U.S.C.S § 77k, and the implied right of action in § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78j(b), continues to secondary actors who commit primary violations."  As alleged on numerous occasions, plaintiff's damages and this crisis could not have occurred were it not for the essential participation of the credit rating agencies and investment bankers who were clearly primary violators.  The attempt by the defendants to shift liability to borrowers and originators is foolish, especially in light of their well documented reckless behavior.

Per reliance, id. "The Court has found a rebuttable presumption of reliance in two circumstances. First, if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance." Omissions of dramatic changes to underwriting guidelines, in particular stated or no doc loans was a material fact.  Dramatic underwriting changes coupled with

4

BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

the fact that defendants could have easily verified incomes via IRS form 4506 are substantial proof of scienter.

Upon leave to amend complaint plaintiff can easily address these omissions to each and every defendant.  Plaintiff is certain he can streamline the 433 pages found in a similar complaint involving Countrywide and numerous others including Citigroup and Goldman Sachs.  2:07-cv-05295-MRP-MAN.  Plaintiff restates his willingness to follow prosecution of this case.

Plaintiff presents the following ad per LowerMyBills.com aka Experian's deceptive and unfair business practices.

**Exhibit A**



Exhibit A represents a typical ad placed by LowerMyBills.com aka Experian.  This ad was constantly displayed on web sites throughout the United States and in relevant markets during relevant times.  Furthermore the ad was displayed when rates were rates were dramatically increasing.  After years of complaints Experian changed "rates" to "payments".  Plaintiff

5

BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

has not seen the ad for many months after the majority of lenders are no longer originating option ARMs.  This and similar deceptive ads were a clear contributor to the proliferation of option ARMs and unlawful restraint of commerce.

One would expect that consumers are not that gullible, but the unconscionable advantage lenders have over consumer's desire to obtain and maintain homeownership is truly overwhelming. The need for fiduciary agents is paramount for such an expensive purchase.

This court and many others are just now becoming familiar with numerous cases involving option ARMs.  It is hard to imagine that borrowers could believe they were obtaining loans with interest rates of 1-1.95% despite savings accounts paying approximately 3%.  Perhaps this is just the biased opinion of someone who never sold an option ARM loan.

As this crisis continues to unfold how much assistance should these borrowers receive at the cost of frugal home owners who have opted to live within their budgets.  Again these borrowers have disrupted real estate prices by removing supply/homes they should have never been allowed to purchase or refinance.   The best explanation for what we are now experiencing is privatized gains and socialized losses.

It has been said that a picture is worth a thousand words.

6

BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

This is clearly a very scary and telling image involving horrific devastation for the American Dream of Homeownership. This problem will get much worse as Option ARMs begin to recast in mass after 2010.

**Exhibit B**



In addition to cases with claims from borrowers the courts are becoming flooded with cases where investors were led to believe they could generate 15% returns from loans that were paying only 9%.  Unlike the borrower classes these "investors" were truly victims in the sense that they were misled by a money manager regarding their pension funds.  These "money managers" should share in the responsibility for this unprecedented fraud, especially given their reckless behavior.

Defendants have not disputed the rampant fraud alleged by plaintiff or the quoted studies cited by plaintiff and O.C.C.

7
BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

Chairman Duggan. Plaintiff maintains that the frequency and magnitude of fraud in relevant markets are second to none.  The delay in foreclosures for local markers is due to the unprecedented appreciation and access to debt paying capital for relevant markets.  Discovery of this fraud will help streamline the cases.

Plaintiff affirms that he has clean hands and could not possibly present a slippery slope.  The court and defendants are respectfully requested to Google plaintiff's name.  The results should reflect many years of documented attempts to stop fraud and the destruction of the American Dream of Homeownership.

As previously documented relevant markets reflect values often 2-4 times that of other equivalent metros.

A willingness to commit fraud and breach fiduciary duties should not be a requirement to compete.  Antitrust laws were designed to encourage competition for the benefit of consumers and to reduce the concentration of wealth.

Plaintiff has substantiated his claims and provided evidence that the defendants are now attempting to boycott all mortgage brokers.

Additional facts and requests regarding the case are noted as follows.

a. Plaintiff requested IFP status, not in hopes of saving the filing fee, but in order to receive assistance with the service of complaint, access to PACER and other assistance provided to IFP litigants. Plaintiff apologizes for his procedural errors. Plaintiff is hopeful that when viewed in the context of crimes perpetrated by defendants, the errors will be scrutinized accordingly i.e. on IFP application plaintiff mistook monthly for annual income. Plaintiff does not earn $55,000 per month and respectfully requests that Lexis and other databases be updated to reflect this fact

b. Active complaint was only pleading served upon defendants. Plaintiff attempted to conference with defendants so they could better understand his claims. Defendants' insisted on moving to dismiss instead of requesting additional statements. Defendants, especially McGraw Hill defendants have done everything possible to add unnecessary work for themselves, the court and the plaintiff in hopes of making this case look much more burdensome than it really is.

c. Despite the original complaint being filed on August 9, 2007, defendants have recently filed their motions to dismiss on May 12, 2008. Any arguments of timely prosecution are unfounded.

d. Since filing the original complaint Bear Stearns has collapsed, approximately one trillion in taxpayer assistance has been allocated for bail outs, numerous lenders and others are under investigation, executives (defendants) have been questioned about compensation. Many other executives have been removed from their positions.

e. Plaintiff has provided a Wells Fargo statement reflecting losses in excess of one million dollars in one year in only one of two accounts. The other statements during relevant times combined will reflect similar losses providing total losses of approximately two million dollars. On any scale this would qualify as an "injury in fact". Plaintiff does not allege any hypothetical losses in the preceding statements. These losses and the closing of plaintiff's office are clearly connected to the actions of the defendants.

9

BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS

Defendant James Cayne cites Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1168 (9th Cir. 2006) as authority with his case. Tuazon moved from the Philippines to Washington State after having contracted a cigarette related illness. Tuazon sues RJR for an alleged conspiracy to "suppress information regarding the addictive and health-related effects of cigarettes". RJR moves to try case in Philippines, but Tuazon is unwilling due to his unfavorable experiences in the Philippine court system. Trial is allowed to proceed in Washington, despite RJR's headquarters in North Carolina. Plaintiff is puzzled by Cayne's citation to Tuazon given that it is another case that favors plaintiff's claims and arguments.

Regardless if Cayne has had any substantial contacts or personal dealings within the State of California he has greatly benefited from business dealings of Bear Stearns. Bear Stearns as a corporation is unable to make decisions or manipulate security information; these decisions have been reserved for the CEO during relevant times, Mr. James Cayne. In further support of plaintiff's complaint Bear Stearns is now the subject of numerous investigations.

Plaintiff is certain he can provide an all inclusive and specific amended complaint if he is provided the opportunity to

do so.  This brief is in support of pending oral arguments opposing all motions to dismiss.

Dated July 8, 2008                                      _____

/s/Michael Blomquist

11
BRIEF SUPPORTING NEED FOR ORAL ARGUMENT OPPOSING MOTIONS TO DISMISS