Michael Blomquist
18234 Daves Avenue
Los Gatos, CA 95030
Telephone: (408) 399-0590
Email address: michaelsblomquist@gmail.com

Plaintiff Pro Se

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| MICHAEL BLOMQUIST, <br><br> Plaintiff, <br><br> vs. <br><br> WASHINGTON MUTUAL, a Washington corporation; KERRY K. KILLINGER; JOSEPH W. SAUNDERS; COUNTRYWIDE HOME LOANS, INC. a Delaware corporation; ANGELO MOZILO; WACHOVIA CORPORATION, a North Caroline corporation; KEN THOMPSON; CITIGROUP, a Delaware corporation; SANFORD WEILL; CHARLES PRINCE; GOLDMAN SACHS GROUP, INC., a Delaware corporation; HENRY PAULSON; BEAR STEARNS COMPANIES, INC., a Delaware corporation; JAMES CAYNE; THE MCGRAW HILL COMPANY, INC., A Delaware corporation; HAROLD MCGRAW III; WELLS FARGO & COMPANY, a Delaware corporation; PATRICIA R. CALLAHAN; HERBERT M. SANDLER; ROCK HOLDINGS, INC., a Delaware corporation; EXPERIAN CORPORATION, a Delaware corporation; FIMALAC, INC., a Delaware corporation; MOODYS CORPORATION, a Delaware corporation; JAMES E. GILLERAN; JOHN M. REICH; JOHN D. HAWKE JR.; JOHN C. DUGAN; SUSAN SCHMIDT BIES; DONALD E. POWELL; SHEILA C. BAIR, <br> Defendants. | CASE NO. C07-04108 JF <br><br> Hon. Jeremy Fogel <br><br> **BRIEF IN RESPONSE TO JULY 11, 2008 HEARING** |

Brief in Response to July 11, 2008 Hearing

Case No. C07-04108 JF

Plaintiff respectfully requests to address comments and issues that were not addressed during the recent hearing on July 11, 2008.

## Leave to Amend

The overwhelming majority of authorities cited by defendants in MTDs had allowed for second and even third amended complaints before the courts issued a ruling. The majority of these cases were handled by legal counsel for all litigants. As the court stated during the July 11, 2008 hearing the Ninth Circuit does follow a liberal policy towards leave to amend; furthermore plaintiff is pro se, which should provide leniency in and of itself. Plaintiff's only amended complaint was one month after the original complaint and removed plaintiff's corporation from the action. Plaintiff does not claim ignorance as a defense, but did not request leave to amend for FAC. **Is the FAC legal and binding?** In addition there have been no statements of particularity that could properly maintain or dismiss any of the defendants at this time. Granting proper and just leave to amend will clarify these extremely important issues.

## Standing Antitrust, UCL & FAL

"It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators. United States v. Schenck, 253 F. 212, 213, aff'd, 249 U.S. 47; Levey v. United States, 92 F.2d 688, 691. Acceptance by competitors, without previous agreement, of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce, is sufficient to establish an unlawful conspiracy under the Sherman Act. Eastern States Lumber Assn. v. United States, 234 U.S. 600; Lawlor v. Loewe, 235 U.S. 522, 534; American Column Co. v. United States, 257 U.S. 377; United States v. American Linseed Oil Co., 262 U.S. 371. e. g. Interstate Circuit v United States 306 U.S. 208. Twombly did not change this issue.

Plaintiff appreciates [emphasis added] the court's time and special attention, but still believes the court does not understand the seriousness of the crimes and consequences the plaintiff and law abiding consumers are facing. On Friday July 11, 2008 IndyMac was placed in conservatorship. Fannie Mae and Freddie Mac are now on the brink of insolvency and could cost taxpayers trillions of dollars available at, http://www.latimes.com/business/investing/la-fi-fannie14-2008jul14,0,618728.story.

Plaintiff agrees and submits that if the illegal activities pled by plaintiff were isolated or only a fraction of the originations during relevant times in relevant markets he would not have standing. Plaintiff alleges that loan fraud was more prevalent in relevant markets during relevant times than loans without incidences of fraud; that is better than 50% of loans were originated under fraudulent pretenses. These are not good odds for a law abiding broker considering the dramatic risk to the broker from repurchase agreements invoked by the actions of his agents. Unlike the tortuous violations filed by plaintiff these potential contractual violations would have been per se.

These legal and contractual boundaries do not even begin to address the breach of fiduciary duties. The media has done a poor job at addressing the severity of this crisis. Besides the 3.5 million families facing foreclosures (10 million + people) there are close to a hundred millions families who have experienced huge price declines not seen since the Great Depression; if these consumers recently purchased the pain of losing hard earned, after tax money is much greater than losing appreciation. In the relevant markets during relevant times it was extremely obvious that recent appreciation would lead to a huge collapse and consumers should not be assisted to commit financial suicide and lose their life savings.

The willingness of countless other brokers to not operate within legal boundaries, adhere to contractual obligations or breach fiduciary duties does not remove standing for plaintiff. Furthermore standing is not removed by the lack of prosecution by a complicit government who is actively shifting the toxic debt to taxpayers; see TSLF, Stimulus Package, Foreclosure Rescue, etc available at, http://www.cbsnews.com/stories/2008/07/11/business/main4253398.shtml. In addition to the damage to competition and consumer prices these bail outs provide an extremely destructive moral hazard to our posterity and the future of our country. A clear message is being sent that crime does pay.

Limited review by the courts can produce evidence that plaintiff was one of the only brokers attempting to bring attention to the rampant loan fraud which was not only destroying the American Dream of Homeownership, but also our financial markets. There is little or no threat of others filing similar suits and invoking concerns for a slippery slope. Court is encouraged to "Google" plaintiff's name and read his many documented letters to defendants and others. Plaintiff reaffirms the importance of this case to public policy.

Brief in Response to July 11, 2008 Hearing

Case No. C07-04108 JF

Countless millions of Americans are losing their homes. The spoils of their misfortune (foreclosed homes) which often resulted from borrowers participation in loan fraud are not [emphasis added] going to the pension funds and other important retirement or insurance investments, but to a select few appointed by agencies ala RTC and S&L crisis. As the evidence of this epic crisis continues to surface it appears to have been pre-meditated versus just reckless lending practices.

As discussed during the July 11, 2008 hearing there were representatives from the lending defendants, including, but not limited to: Countrywide, Washington Mutual, World Savings ("Wachovia"), Wells Fargo, Citigroup, EMC Mortgage Corporation (subsidiary of Bear Stearns) that would call upon plaintiff's mortgage agents and suggest that they shift unqualified borrowers to stated income or no documentation loans. This suggestion was a clear violation of Title 18 § 1014 and one that would put plaintiff in risk of extremely costly repurchase agreements. Plaintiff thus decided to close down his office because these practices became the industry standard instead of the norm. It was impossible for plaintiff to properly oversee his agents when these illegal practices became the industry standard. Plaintiff will allege specific events including agents, approximate dates and companies in an amended complaint.

These unlawful activities have destroyed safe and sound lending practices as well as lawful competition, especially within relevant markets/times. Plaintiff's understanding of antitrust laws require specific violations against plaintiff which he agrees have not been stated in specificity, but this can easily be accomplished in an amended complaint.

Equally, if not more important than the effects of illegal practices on plaintiff are the effects they have on competition and consumer prices. In the short run the defendant's unlawful activities did bring down interest rates, but in the long run the amount of fraud they injected into our system has made interest rates and home prices skyrocket. Consumer prices, fair and legal competition are the benchmark of antitrust legislation. Plaintiff has not heard any valid arguments on how he does not have standing to bring antitrust violations against the defendants. Plaintiff does admit and agrees that he has not properly plead allegations and claims in the active complaint, but that clearly does not indicate the lack of standing, especially considering the unprecedented bail outs that are occurring within our financial markets prior to difficult economic times. Plaintiff is gravely concerned about the future of foreclosures as job losses begin to increase current foreclosure projections.

Plaintiff alleges that the defendants enlisted the brokers and unqualified borrower to commit unlawful activities and attempt to shield liability, but the fact still remains that many of the lenders' retail divisions were just as guilty or more so at committing loan fraud.

Furthermore plaintiff affirms that the mortgage brokers were secondary violators unable to fund loans while the defendants were primary violators who were essential in funding and completing the criminal acts.  Plaintiff is prepared to purse his case as vigorously as did Chester Wilk against the American Medical Association e.g. 467 U.S. 1210.

Plaintiff does not bring this matter on behalf of the public although concerns are closely aligned.  Plaintiff's understanding of antitrust violations is further explained in the following video available at,http://www.youtube.com/watch?v=tInGmeFKplo.  Again, the lack of government enforcement of antitrust violations should not reflect a lack of legal standing for plaintiff, rather more evidence for a thorough investigation by the judicial system in order to maintain checks and balances.   It is possible that the defendants were also easily enlisted by greed to commit loan fraud in order to strip consumers of their homes for the benefits of others.  Regardless if the defendants are benefitting from foreclosures they were involved in criminal activities to the detriment of plaintiff.

Again the plaintiff recognizes the deficiencies in his complaint and needs to state with particularity the violations of securities fraud and unjust enrichment as it applies to defendants and his petition.   Plaintiff is confident he can do so in an amended complaint.

## **Antitrust Boycotting**

The majority of the defendants are now boycotting mortgage brokers and are attempting to use them as the scapegoats in this crisis.    The Clayton Act was promulgated to stop antitrust violations in their incipiency.

## **Standing for Securities Fraud & Unjust Enrichment**

Never [emphasis added] before in history have we seen such destructive activities against competition, safe and sound banking or public policy.  Plaintiff alleges that besides antitrust , UCL and FAL violations numerous other defendants both corporations and individuals have been unjustly enriched at plaintiff's expense.  The unjust enrichment was through the concealment and delay of reporting fraud through selling puts and other activities which concealed criminal behavior and dramatically increased the magnitude of illegal consequences.  It is not alleged that plaintiff relied on false or misleading statements, rather the defendant's duty

under SOX and other laws to report the truth. All individual defendants have failed to report the truth of their recent business activities which was primarily based on loan fraud not "laxed" lending practices.

Adding a little more color on securities fraud and unjust enrichment plaintiff affirms the following. The most significant losses of over $500,000 incurred by plaintiff were the result of Providian being purchased for an inflated price in order to unjustly enrich defendants: Killinger, Saunders, WAMU, Goldman Sachs and Citigroup. The valuations provided by Goldman Sachs and Citigroup artificially inflated the value of Providian in order to unjustly enrich the defendants and provide relief to the bond holders who were previously sold the toxic waste by the same defendants. Many of the bonds supporting Providian's unlawful activities were convertibles and did not receive any interim interest payments. Some notes were coming due or required to pay substantial interest payments. The failure of these Providian bonds would have provided a enormous legal liability to Goldman Sachs, Bear Stearns and Citigroup for misleading investors during the original purchase because they underwrote many of the deals. Similar to the alleged rampant appraisal fraud that has restrained commerce; the defendants have been provided inflated valuations for many of the recent mergers and acquisitions within the financial markets. As with Enron, WorldCom, etc. unrestrained M&A activity greatly increased the magnitude of losses and only delayed the inevitable. It is alleged that if the defendants had not provided misleading information the companies would have failed. The early failure of Providian would have sent warning shots to others in the financial sectors that you are not too big to fail and we prefer smaller failures to systemic failures that we are now experiencing. WAMU utilized the credit card lines, goodwill and other elements of Providian to provide additional lines of credit to borrowers so they would not default on the WAMUs repurchase agreements. As plaintiff is now alleging; contracts (repurchase obligations for a default within 6 months) are much easier to enforce than claims regarding fraud after 6 months. This allegation is further evidence of scienter. Plaintiff's reliance was on the obvious problems of future insolvency listed within Providian's financials. Providian is the connection to Joseph Saunders who formerly headed HFC prior to HFC receiving the largest fine ever in history. Saunders is now CEO of VISA and will most likely continue his predatory practices available at,
http://www.banking.state.ny.us/report02/Narratives/7-enforcement.html

Saunders was not CEO at the time of the HFC fine, but his practices were still in place.

1  The only potential secondary violators are Experian and Rock Holdings; their role in the
2  antitrust and unfair competition claims could be considered significant instead of essential. All
3  other defendants were essential in the violations. Experian and Rock Holding have been
4  reported by plaintiff to the California DRE, DOJ, FTC and others for their false and misleading
5  advertising. Because these defendants are not active brokers they are not precluded from
6  existing state and federal laws that prohibit false and misleading advertising. Plaintiff affirms
7  that it has been a while since they have ran this ad, but stopping an illegal act does not provide
   immunity.



   Per the rating agencies none of this would have happened if it were not for the CRAs.
   The lenders would have been obligated to continue selling and securitizing most of their debt to
   Fannie Mae, Freddie Mac and the FHA. During the relevant times Fannie Mae and Freddie Mac
   would not purchase the loans that the CRAs were rating as investment grade. Because we are
   now facing a crisis of biblical proportions congress has forced Fannie Mae and Freddie Mac to
   purchase this toxic waste through the "stimulus act" and these entities are now facing insolvency.
   Plaintiff believes he has standing, but has not properly pled his allegations and claims. In
   addition plaintiff believes the court does not understand the magnitude and frequency of fraud
   during relevant times in relevant markets. Plaintiff is a pro se litigant who is confident and
   determined to find justice. Plaintiff's prior testimony to the regulatory agencies have proven to
   be extremely accurate despite many of the defendants' statements to the contrary see exhibit A
   available at, http://www.michaelblomquist.com/complaint.
   Plaintiff respectfully requests a minimum of two weeks to draft and submit his amended
   complaint. The costs to all defendants to respond to each claim as they pertain to defendants
   should be minimal since they have already responded to all claims. Per Cayne's individual
   jurisdiction he cannot be granted dismissal when a lion share of his company's profits and his

bonuses were paid as a result of the rampant fraud perpetrated by Bear Stearns as both a lender and an investment bank in plaintiff's relevant markets within California. Regardless, if Cayne set foot in California he directly benefitted from the rampant unlawful acts committed within the state of California by Bear Stearns.

DATED: July 14, 2008                              Respectfully submitted,
                                                  /s/ Michael Blomquist
                                                  Pro Se
                                                  18234 Daves Avenue
                                                  Los Gatos, CA 95030
                                                  (408)399-0590
                                                  michaelsblomquist@gmail.com