\*\*E-filed 7/23/08\*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MICHAEL BLOMQUIST,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>WASHINGTON MUTUAL, et.al.,<br><br>　　　　　　　Defendant. | Case Number C 07-04108 JF<br><br>ORDER[1] GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>[re: docket nos. 45-47, 49-53, 58, 59, 87, 97, 98, 100-113] |

**I. BACKGROUND**

　　On August 9, 2007, Plaintiff Michael Blomquist ("Blomquist"), a licensed mortgage and real estate agent, filed the instant suit against Washington Mutual, Kerry K. Killinger, Joseph W. Saunders, Countrywide Home Loans, Inc., Angelo Mozilo, Ken Thompson, Citigroup Corp., Sandford Weill, Charles Prince, Goldman Sachs Group, Inc., Henry Paulson, Bear Stearns Co., James Cayne, The McGraw Hill Co., Harold McGraw III, Wells Fargo & Co., Patricia R. Callahan, Herbert M. Sandler, Rock Holdings, Inc., Experian Corp., Fimalac, Inc., Moodys Corp., James E. Gilleran, John M. Reich, John D. Hawke Jr., John C. Dugan, Susan Schmidt Bies, Donald E. Powell,

---

[1] This disposition is not designated for publication in the official reports.

Sheila C. Blair and Does 1-50 ("Defendants"). On September 10, 2007, Blomquist amended his complaint. The First Amended Complaint ("FAC") alleges four claims for relief brought under the California Civil Code, the California Financial Code and the California Business and Professions Code: (1) false or deceptive statements that restrain trade and create unfair competition; (2) unsafe and unsound lending that restrains trade and creates unfair competition; (3) sale of products below cost to restrain trade and create unfair competition; and (4) fraud and conspiracy that restrains trade and creates unfair competition. Two additional claims are brought under the United States Constitution and federal laws: (5) failure to supervise lending and banking agencies in violation of the United States Constitution Article II § 2 and the Administrative Procedures Act (brought against "Agencies"[2] only); and (6) fraudulent transactions involving domestic securities in violation of 15 U.S.C. §§ 77w, 78b(3), 78i, 78j, 78k-1, 78L, 78o-6, 78uuu. FAC ¶¶ 49-69.

Blomquist accuses Defendants of making fraudulent and misleading statements in connection with their lending practices and securities transactions. The allegations of the FAC relate to the sale of "stated income" or "no income verification" loans ("NIV loans"), option adjustable rate mortgage loans ("option ARMs") and one hundred percent financing and income tax practices. The FAC describes these products as follows: NIV loans are loans offered without requiring that the borrower provide income documentation. FAC at ¶ 34. Option ARMs are mortgages with an interest rate that adjusts to match the market rate; while the payments due on these mortgages often remain fixed for a period of one year, the interest rate typically begins to adjust during the second month. *Id*. at ¶¶ 36, 37. One hundred percent finance loans cover the entire purchase price of the borrower's new home. The lender is able to benefit from these loans by taking advantage of a tax deduction equal to the lump sum amount of the loan. *Id*. at ¶ 38.

According to the FAC, NIV loan practices changed in 2004. These changes allowed unqualified borrowers to take on loans they could not afford. Previously, only borrowers with excellent credit standing were eligible for NIV loans. But in 2004, the guidelines were relaxed to allow any individual with a Form W-2 to apply. Blomquist alleges that ninety percent of all NIV

---

[2] Blomquist has not named any Agencies as defendants.

loans are based upon inflated borrower incomes. *Id*. at ¶ 35. Blomquist also alleges that option ARM worksheets configured when interest rates are low are inherently misleading. He claims that ninety percent of option ARM borrowers can make only the minimum payments. *Id*. at ¶¶ 36, 37. With respect to one hundred percent financing and income tax practices, he asserts that the borrower typically has very few assets and therefore is not able to take on the taxes imposed following his purchase. *Id*. at ¶ 38. Finally, Blomquist alleges that "risk layering," the combined packaging of these products, is unsafe for borrowers and lenders. *Id*. at ¶ 39.

The FAC alleges that Defendant Goldman Sachs, along with its CEO and Chairman, Defendant Henry Paulson (collectively "Goldman Sachs"), assisted in several debt offerings for mortgage lenders. The FAC also asserts that Defendants McGraw Hill Co., Inc., Fimalac, Inc., and Moodys Corp. ("CRA Defendants") provided credit ratings and market analyses for NIV loans and option ARMs.

Blomquist, who is the sole owner of Michael Scott Properties, Inc., alleges that he suffered damages in two ways. First, he claims that he lost business because of Defendants' unlawful activities. He alleges that the products and practices described in the FAC have restrained him from mortgage and real estate commerce because of legal, fiduciary, ethical, and moral conflicts. Because he would not direct his customers to obtain loans from Defendants in light of Defendants' unlawful activities, he lost business. *Id*. at ¶ 4. Second, he asserts that Defendants' securities fraud caused his personal investments to lose value. *Id*. at ¶ 6.

Several Defendants move to dismiss the FAC based on insufficient pleading and Blomquist's lack of standing.[3] After oral argument, Blomquist submitted a proposed amended complaint detailing additional facts he is prepared to assert. In this proposed pleading, Blomquist claims

---

[3] Blomquist's opposition papers refer only to the motions to dismiss brought by Defendants McGraw Hill, Harold McGraw III, Fimalac, and Moodys Corp. Several other Defendants argue that this leaves unopposed the motions brought by Experian Corp., Washington Mutual, Wells Fargo, Bear Stearns, Wachovia Corp., Citigroup, Goldman Sachs Group, Inc., and Countrywide Home Loans, Inc., and that as a result the Court should dismiss Blomquist's complaint summarily as to these Defendants. Because Blomquist is proceeding *pro se*, and clearly intends to pursue his claims against all Defendants, the Court will treat Blomquist's opposition as if it were directed to all the motions to dismiss.

3

Case No. C 07-04108
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
(JFEX3)

specifically that Washington Mutual, Countrywide Home Loans, Inc., Wachovia Corp., Wells Fargo & Co., Citigroup, and EMC, a subsidiary of Bear Stearns, and their executives, Kerry Killinger, Joseph Saunders, Patricia R. Callahan, Angelo Mozilo, Sanford Weill, Charles Prince, and James Cayne ("Lender Defendants") called upon him to be a party to illegal mortgage loans. Proposed Amended Compl. 4:7-9.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). When considering a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and the plaintiff's allegations are taken as true. The Court's review is further limited to the face of the complaint and matters judicially noticeable under the Federal Rules of Evidence, Rule 201. FED. R. EVID. 201; *Jenkins v. McKeithen*, 395 U.S. 441, 421 (1969); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). The pleading of a *pro se* litigant is held to a less stringent standard than a pleading drafted by an attorney, and is to be afforded the benefit of any doubt. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). In addition, a *pro se* litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Nevertheless, factual allegations in the complaint must be enough to raise the right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 127 S.Ct. at 1965.

## III. DISCUSSION

### A.    Blomquist lacks standing to sue

The elements necessary to establish standing are "not mere pleading requirements but rather an indispensable part of the Plaintiffs' case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree

of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Article III of the Constitution "requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation marks omitted).

In order for a plaintiff to have standing, the plaintiff must allege three things:

1. injury in fact;
2. causal connection between the injury and the conduct complained of; and
3. "substantial likelihood" that the requested relief will remedy the injury in fact.

*See, e.g., McConnell v. FEC*, 540 U.S. 93, 225 (2003).  Because the FAC does not meet these basic requirements, it must be dismissed.

### 1. Blomquist does not adequately plead injury with respect to claims one through five

#### a. Non-Lender Defendants

Much of the FAC is directed at alleged widespread fraud in the mortgage-lending industry and the effects that such fraud has had on borrowers.  *See, e.g.,* FAC ¶ 48 (detailing Defendants' deceptive mortgage sales tactics).  However, in order to have standing, a plaintiff must show that *he* "has sustained or is immediately in danger of sustaining some direct injury" as a result of the defendant's actions.  *See, e.g., McConnell*, 540 U.S. at 225.  To the extent that the injury of which Blomquist complains was suffered by borrowers, he lacks standing, and he may not sue to vindicate the injury.  By definition, any injury to Defendants' borrowers is not personal to Blomquist.[4]

---

[4] Because Blomquist does not meet the requirements of injury and causation, it is unnecessary to examine whether he would be able to assert third-party standing.  Nevertheless, it bears mentioning that Blomquist has not alleged any of the traditional exceptions to the prohibition on third-party standing, such as that the borrowers will be unable to sue, *see Barrows v. Jackson*, 346 U.S. 249, 257 (1953), or that he has a special relationship with the borrowers. *See Craig v. Boren*, 429 U.S. 190, 195 (1976).

Blomquist claims that Defendants caused damage to borrowers and the public at large through their involvement in unsafe lending practices. He has not alleged, nor does he claim that he could allege, any facts showing that Goldman Sachs, the CRA Defendants, or any other non-Lender Defendants injured him personally. Accordingly, because Blomquist cannot allege facts that would give him standing to sue the non-Lender Defendants, the motions to dismiss filed by these Defendants will be granted without leave to amend.

### b.  Lender Defendants

Blomquist also asserts that Defendants' actions "restrain[ed] trade for business entities not willing to participate in unlawful activities." *Id.* at ¶¶ 53, 56, 60, 63. He claims that he lost business because he refused to direct his customers to the Lender Defendants. During oral argument, Blomquist stated that he could allege specific instances in which Lender Defendants' agents solicited his agents and clients to be parties to illegal mortgage loans, and that he lost business because he refused to go along. Without deciding whether such additional allegations would be adequate to establish standing, the Court will grant Blomquist leave to amend his complaint as to the Lender Defendants. In his amended complaint, Blomquist must allege specifically which Lender Defendants approached him or his agents about arranging illegal loans and when they did it. Blomquist also must allege how the Lender Defendants' unlawful activity directly caused him to suffer an economic loss. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (plaintiff's injury must be "fairly traceable to the defendant's allegedly unlawful conduct").

### 2.  Blomquist does not allege that he purchased or sold any of Defendants' securities, as required under Rule 10b-5

In order to have standing to sue under Rule 10b-5, a plaintiff must allege that he purchased or sold securities about which the defendant has made a material misrepresentation. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 747 (1975). A plaintiff must have "at least dealt in the security to which the... representation relates." *Id.* Blomquist alleges that Defendants engaged in fraud because their unlawful activity caused the value of their stocks to be artificially inflated. However, he does not allege that he bought or sold any Defendant's securities, and he admits that he did not rely on any misrepresentation in purchasing the securities he did purchase. Proposed

6

Amended Compl., 5:28. Accordingly, he lacks standing to sue for securities fraud.

The FAC does not clearly state the basis of Blomquist's securities fraud claim. It appears that Blomquist purchased securities from other companies because he knew about Defendants' unlawful activities. FAC ¶ 6. Blomquist alleges that he did this expecting that the impending fall of Defendants' stock would cause a corresponding rise in the shares he purchased. *Id.* He concludes that Defendants' fraudulent activities caused his investments to lose value. *Id.* at ¶ 69. The FAC includes no allegation that Defendants made material misrepresentations as to any of the securities he actually bought. For that matter, he does not allege how Defendants' actions directly caused the value of his investments to fall, except to contend that their actions adversely impacted the economy as a whole.

Despite having the opportunity to do so, Blomquist did not indicate during oral argument or in his proposed amended complaint that he bought any of the Defendants' securities. Because it does not appear that Blomquist could allege standing to sue, the Court will dismiss the securities fraud claims against all Defendants without leave to amend.

**B.    The factual allegations of the FAC fail to state a claim upon which relief may be granted**

Finally, Blomquist's pleadings are inadequate, as he recognizes. Pl.'s Opp. Br. 4:24-28. While the FAC alleges that all Defendants either were primarily responsible for the alleged activities or aided and abetted them, it does not specify what each Defendant actually did that constituted one or more violation. At present, the allegations simply assert legal conclusions that the Defendants committed unlawful acts. Even under the liberal standards for *pro se* litigants on a motion to dismiss, this is insufficient. The Court is not required to accept as true a plaintiff's legal conclusions without any supporting facts. *Twombly*, 127 S.Ct. at 1965.

Moreover, claims involving fraud are subject to a heightened pleading standard. FED. R. CIV. P. 9(b) requires plaintiffs to plead fraud with particularity. The FAC contains only vague, conclusory assertions that the Defendants engaged in fraudulent activity. To the extent Blomquist is granted

7

leave to amend, he must correct these pleading deficiencies in addition to establishing his standing.[5]

### IV. ORDER[6]

Good cause therefor appearing, IT IS HEREBY ORDERED that the motions to dismiss are GRANTED. Leave to amend is granted as to the claims against Lender Defendants other than for securities fraud and otherwise is denied.

DATED: July 23, 2008.

_____
JEREMY FOGEL
United States District Judge

---

[5] Blomquist also has requested that the Court waive his access fees for PACER. Because Blomquist has not demonstrated an economic need for such relief, it will be denied.

[6] In light of the foregoing disposition, the Court does not address Defendants' remaining arguments.

1  This Order has been served upon the following persons:
2  Micahel Blomquist    michaelblomquist@yahoo.com
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28