Michael Blomquist
18234 Daves Avenue
Los Gatos, CA 95030
(408)399-0590
(408)399-0590 (FAX)
michaelsblomquist@gmail.com
Plaintiff
Pro Se

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| Michael Blomquist | Case No.: C07-04108-JF |
| Plaintiff, | **MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION** |
| vs. | |
| WASHINGTON MUTUAL, et. al., | |
| Defendant. | |

## MOTION FOR LEAVE

Plaintiff Michael Blomquist hereby moves for leave to file a motion for reconsideration of the portion of Court order, filed July 23, 2008, granting Defendants motions to dismiss. Plaintiff does not request leave to file motion for reconsideration on claims against **Experian, Rock Holdings and Agencies.**

The motion is made within the protections of the fourteenth amendment and on the ground that there was a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the court before the motion to dismiss ruling was made (Local Rule 7-9(b)(3)), as set forth in the attached Memorandum of Points and Authorities.

Dated: August 4, 2008                         by: /s/Michael Blomquist
                                                          Michael Blomquist
                                                          Plaintiff Pro se

## MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION
## C07-04108-JF
### (1)

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................3

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*
406 U.S. 128……….....................................................................................7

*Conley et. al., v Gibson et. al.,*
355 U.S. 41 (1957)……....................................................................................9

*Stoneridge Investment Partners, LLC v.Scientific-Atlanta, Inc.*
128 S. Ct. 761, (2008) .....................................................................................7

**Other Authorities**

Comptroller of the State of New York v Countrywide et. al
Case 2:07-cv-05295-MRP-MAN (C.D. CA) ,…………….................................4

People of the State of CA (City of San Diego) v Countrywide et. al.,
…………………………………………………………………………….4

People of the State of CA v Countywide et. al.,
Case LC081846  (Superior Court for the County of Los Angeles County)……............... 4

Report on the Role and Function of the Credit Rating Agencies
As Required by Section 702(b) of the Sarbanes-Oxley Act of 2002………………………...5

SEC Summary Report of the Credit Rating Agencies
CRA's role in the recent turmoil in the subprime mortgage-related securities markets…….6

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff is a pro se litigant who has admitted on numerous occasions that his active complaint is deficient, but has affirmed that these deficiencies can be cured in an amended complaint. Plaintiff apologizes to the court and recognizes that his active complaint is a "scattershot" approach, but deficiencies can be easily cured if provided ample time and opportunity. Since filing the FAC on September 10, 2007 Plaintiff has attended numerous legal workshops, classes and now has access to Lexis. Plaintiff is now much better equipped to plead and prosecute his claims.

Plaintiff submits that the same reasoning the court utilized to grant leave to amend for claims against the Lender Defendants should be extended to Executives, CRAs and Investment Banks. In addition, this same reasoning should be extended to securities fraud claims for Lenders, Executives, CRAs and Investment Banks. Plaintiff maintains that the court erred in not considering the facts and arguments listed below when considering leave to amend and plaintiff's ability to prove standing.

This is a case of first impression and the court is respectfully encouraged to consider similar pending cases that have survived motions to dismiss, in particular 2:07-cv-05295-MRP-MAN. This case also involves Defendants; Countrywide, Angelo Mozilo, Goldman Sachs & Citigroup. The amended class complaint is bookmarked/highlighted and available at, http://www.michaelblomquist.com/casespending/NewYorkPensionvCountrywide/Document186.pdf. Please note within this complaint the multiple references to non-traditional mortgage products (Option ARMs) and plaintiff's numerous attempts to stop the proliferation of these fraudulent and deceptive products: TRO (D.E. #10), exhibit A in FAC (D.E. #8), available at, http://www.michaelblomquist.com/complaint/mycomments.htm. It should be noted that all

Defendants have stopped originating Option ARM loans. Plaintiff does not allege to represent the interest of third parties, but these interests are closely aligned as well as deeply rooted in antitrust statutes. Clearly, the public and posterity will be paying for the Defendants' greed and unlawful acts for decades to come. Per standing for more specific claims the Plaintiff, not the public was unlawfully restrained from commerce or a victim of securities fraud. In many cases consumers were more closely aligned with the Defendants.

The Court's July 23, 2008 ruling ("ruling") 3:16-18 states, "Because he would not direct his customers to obtain loans from Defendants in light of Defendants' unlawful activities, he lost business." The issues are so much more involved and require the active participation of all remaining Defendants (excluding Experian, Rock & Agencies). As prices continued to skyrocket borrowers were required and encouraged to over-stated incomes. Instead of buying a condo or something they could afford they were enticed to commit fraud. Decades of risk models, statutes, safe and sound lending regulations were tossed aside for self-enrichment. The magnitude of this crisis could not have grown so large without the involvement of the CRAs and Investment Banks available at,

http://www.michaelblomquist.com/News/Bloomberg/20071220RatingSubprimeMadeJokeofCreditExpert.pdf

Investment Bankers required investment grade ratings from CRAs in order to access funds from pension funds, insurance companies, etc. After conversations with an insider at one of the CRAs it was stated that the decline in lending standards were initiated by the CRAs and agreed to by the Lenders, Investment Banks and CRAs. CRA reports are bookmarked and highlighted available at,

http://www.michaelblomquist.com/Papers/ReportontheRoleandFunctionofCRAs.pdf

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**
**C07-04108-JF**
(5)

http://www.michaelblomquist.com/Papers/20080708CRAexamination.pdf

The combination of the CRAs, Investment Banks and Lenders can be pled with specificity. In addition affidavits from market insiders will be provided. Lending practices and securitizations have changed dramatically during relevant times; regulators and lender limitations would have stopped this unlawful scheme long ago if it were not for the combined efforts of these Defendants.

As guidelines continued to erode Plaintiff's exposure to repurchase agreements skyrocketed. Since homeownership and rapid appreciation was readily available; everyone joined in and many wanted a home they could afford. Approximately, 36% of all relevant market loans in 2006 were Option ARMs. Once the unqualified borrowers bought a home they were trapped in an enslaving cycle of refinancing. Existing lender and existing clients were the best targets after establishing a partner in crime. The pending price correction was extremely foreseeable and will get much worse.

Ruling 6:21-23 states, "In order to have standing to sue under Rule 10b-5, a plaintiff must allege that he purchased or sold securities about which the defendant has made a material misrepresentation." Plaintiff's FAC ¶ 69, "Security losses involve and are not limited to Providian, Washington Mutual and Countrywide." *Id*. ¶ 18, "Goldman has assisted with numerous debt offerings for Providian, WAMU and other mortgage lenders." Plaintiff submits that there were similar statements in FAC with vague implications on Citigroup and associated executives. Plaintiff recognizes that these statements do not meet the heightened pleading standards for securities fraud, but can and will state claims with particularity once he is provided the opportunity.

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**
**C07-04108-JF**

Ruling 6:26-28 also states, "However, he does not allege that he bought or sold any Defendant's securities, and he admits that he did not rely on any misrepresentation in purchasing the securities he did purchase. Proposed Amended Compl., 5:28. Accordingly, he lacks standing to sue for securities fraud." Plaintiff submits, *Stoneridge Investment Partners, LLC v.Scientific-Atlanta, Inc.* 128 S. Ct. 761, (2008) quoting *Affiliated Ute Citizens of Utah v. United States* 406 U.S. 128. "Courts have found a rebuttable presumption of reliance in two different circumstances. First, if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance."

Substantial losses occurring from Plaintiff's security fraud and unjust enrichment claims involve the sale of Providian Financial to Washington Mutual. Despite misrepresentations by Goldman Sachs and Citigroup it is alleged and confirmed by expert witnesses that Providian Financial was insolvent at the time of sale. The false and misleading statements which caused Plaintiff's losses in this instance were provided by related Defendants after the Plaintiff had purchased approximately $500,000 of puts/leaps involving Providian Financial. Much like many of the recent straw-buyer schemes that artificially inflate home prices; the Defendants artificially inflated the purchase price of Providian Financial. As a result of the Defendants manipulative and self enriching scheme Plaintiff's puts/leaps expired worthless. Defendants were actively selling the same puts knowing that the deal was to be done despite the insolvency of Providian, risk to FDIC, Shareholders, global credit markets, etc. Due to this unlawful scheme Washington Mutual's stock price is now bouncing below $5 per share when it had been in a range for many years in excess of $30-35 per share.

Adding to the securities fraud claims the Defendants used Providian Financial in their heinous mortgage fraud scheme which resulted in damages from unfair competition and antitrust

violations.  Credit cards were extended to over-leveraged and unqualified borrowers so that

Lender loan repurchase agreements for early payment defaults ("EPDs") would expire.  Credit

cards would keep unqualified borrowers current for a few extra months and thus a contractual

liability would be switched to a tort liability.  Obviously it is much more difficult to prove fraud

than to enforce a contact.

During oral argument for July 11, 2008 hearing; Plaintiff does recall discussing unfair

competition claims, repurchase agreements and the PHH case.  Plaintiff does not recall

discussing or being asked anything about securities fraud claims.  Ruling 7:11-12, "Despite

having the opportunity to do so, Blomquist did not indicate during oral argument or

in his proposed amended complaint that he bought any of the Defendants' securities." Although

Plaintiff would not have been provided enough time to state in particularity he could have easily

provided the Defendants names as he did above and previously.  Plaintiff nor Defendant's

counsel recognize a proposed amended complaint.  Plaintiff did file a brief hoping to clarify

issues, but that document should not be considered a proposed amended complaint.

Although it was suggested that Plaintiff attach a proposed amended pleading to his

opposition(s); he was not provided ample time to draft a proposed amended complaint with

heightened pleading standards; see 433 page (emphasis added) complaint 2:07-cv-05295-MRP-

MAN.   After having been attacked about the existing FAC; plaintiff wants to make certain that

the next amended complaint is drafted properly.  For the record; the majority of Defendants were

willing to extend additional time for oppositions/proposed amended complaint.  (D.E. #92)

On June 16, 2008 Plaintiff submitted a Wells Fargo statement December 1-31, 2006

showing "realized losses" of $1,070,295.18.  Plaintiff has stated on numerous occasions that his

losses due to securities fraud exceed this amount and this statement only reflects one of two

**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**
**C07-04108-JF**
**(8)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

trading accounts.    Granting Defendants motion to dismiss without leave to amend will be unjust and cause Plaintiff great harm.  Plaintiff can and will state with particularity the Defendants he claims are responsible for his losses.

"The Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits", *Conley et. al., v Gibson et. al.,* 355 U.S. 41 (1957) Plaintiff respectfully requests for leave to file motion for reconsideration.


Dated: August 4, 2008                              by: /s/Michael Blomquist
                                                           Michael Blomquist
                                                           Plaintiff Pro se


**MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**
**C07-04108-JF**
**(9)**